F. J. DUBOS & CO., APPELLANTS, VS. ROBERT H. JONES, DANIEL BOWEN AND MINARD L. HOOVER, AS PARTNERS UNDER THE FIRM NAME OF MINARD L. HOOVER, APPELLEES.

PARTNERSHIP—SHARING OF PROFITS—WHEN HOLDING OUT AS PARTNER IMPOSES LIABILITY AS SUCH.

1. The law at one time treated the *sharing of profits* as the true test that established a partnership, particularly as to *third persons*, but this doctrine has become entirely obsolete, and is no longer law either in England or in this country. The law is now well settled that where a person loans or advances money or goods to another to be invested in some business or enterprise. the lender to share in the profits as or in lieu of interest on, or in repayment of such loan or advance, does not constitute a partnership; neither will it constitute a partnership as to third persons, unless the acts of the parties, in furtherance of the agreement between themselves, amount to such a *holding of themselves out* as partners as that third persons are misled into a reasonable belief that a partnership exists in fact.

2. To constitute *a loan* in such a case, the money advanced must be returnable *in any event*. It is not a loan if *repayment is contingent upon the profits*, for in such case it is made, not upon the personal responsibility of the borrower, but upon the security *of the business*. Neither must the transaction be a *mere device* to obtain the benefits of a partnership without incuring its responsibilities, for in such case, whatever else the parties may call it, it will be construed to be a partnership.

3. Persons who can not be regarded as partners between themselves, may, nevertheless, under certain circumstances, growing out of their acts, declarations and dealings. be regarded as such as to third persons. Thus, a person *holding himself*

*out* as a partner in a firm or permitting himself to be so held out, will be held liable as such as to third parties, whatever may have been his actual relations with the firm or its members. One who is not a partner in fact, however, can not be held liable to third persons on the ground of having been *held out* as such, except upon the principle that where third persons have been misled by such holding out, he is equitably estopped from denying that he was a partner; and, consequently, he is now held liable, as a general rule, *only to such persons as have been misled by or who have acted upon, such holding out.* Whether the plaintiff, in such a case, was induced to change his position or to extend credit on the faith of such holding out, is, as in other cases of estoppel *in pais,* a question of fact for the jury, and not of law for the court.

Appeal from the Circuit Court for Putnam county.

The facts of the case are stated in the opinion of the court.

*H. H. Buckman,* for Appellants.

*Fletcher & Wurts,* for Appellees.

TAYLOR, J.:

This cause is now before this court for the second time (Dubos & Co. vs. Hoover, Jones & Bowen, 25 Fla., 720, 6 South., 788). Since the reversal here of the former findings of the court below in said cause the same was, by agreement of the parties, referred to and tried by a referee, who rendered judgment in favor of the appellees, (defendants below), and from this judgment the plaintiff appeals. In addition to the pleas filed prior to the former trial, the defendant Bowen filed before the referee the following special plea: "And now comes the above-named defendant, Daniel Bowen, by J. W. Archibald, his attorney, and by leave

of court amends the plea heretofore filed in said cause to read as follows: This defendant denies he ever was a partner with said Hoover as alleged." Upon which plea issue was joined. We refer to the former decision of this court in the cause (25 Fla., 720, 6 South., 788), for further statement of the pleadings.

The account sued upon was made out against M. L. Hoover. The effort of the plaintiff was to show that Jones and Bowen were partners of Hoover, and that, though the goods were sold and delivered to Hoover, Jones and Bowen were responsible for their price. There was one issue only before the referee: Were Jones and Bowen partners of Hoover in the business conducted by him, or did the facts and circumstances of the case render them liable in law to the plaintiff as partners of Hoover? To sustain his contention that they were such partners the plaintiff introduced in evidence a certified copy, from the records in the clerk's office of Duval county, of an agreement entered into between the firm of Jones and Bowen (composed of R. H. Jones and Daniel Bowen) and M. L. Hoover, dated September 21st, 1885, which agreement is as follows: This agreement entered into this 21st day of September, A. D. 1885, by and between Robert H. Jones and Daniel Bowen, doing business as firm of Jones & Bowen, of county of Duval, and State of Florida, of first part, and M. L. Hoover, of the same State and county, of the second part. Witnesseth: That the parties of the first part agree to sell and deliver to the party of the second part such groceries and goods usually kept in a grocery store, as may be agreed on between the parties from time to time, to be necessary to keep up and conduct the business carried on in the store of party of second part, on lot ten (10) in block

two (2) in South Jacksonville, Duval county, State of Florida, on the following terms and conditions, to-wit: 1st. That said goods are to be sold by the party of the first part to the party of the second part for the lowest wholesale market price, and one-half of the profits made on sale of said goods by the party of the second part in the manner hereinafter stated, said half of the profits being paid to parties of first part in consideration of the time extended party of second part in payment for said goods, and of time extended in payment of debts now due parties of first by parties of second part.

2nd. That the mortgage of even date herewith from the party of the second part to the parties of the first part, shall include as a lien thereon the said goods as agreed herein to be sold, and shall secure the said indebtedness due parties of first part herein men tioned.

3rd. That the parties of first part may place a person in said store of party of second part, who shall have the control and management of the books and business carried on by party of second part, and no debt shall be created in said business except on the consent of the parties of the first part.

4th. That the party of the second part shall be entitled to draw out of said business fifty dollars per month for his services in conducting the business of selling the said goods so placed in said store, and he shall give his entire time and attention to said business in consideration of said sum of fifty dollars per month, and the profits of said business to accrue to him as herein provided.

5th. That the proceeds of sale of all goods in said business shall be carefully kept and paid over each week to parties of first part on the debts now due them and that hereafter may become due them from the party of the second part for goods sold him as aforesaid and on the other debts of party of the second part for goods in his said business.

6th. That at the end of two years the party of the second part shall be entitled to draw out, or be paid one-half the profits of said business, if at that time all debts due parties of first part and all other debts of said business are then paid, and the remaining one-half of said profits shall be paid to parties of first part, as part of purchase money of the goods sold to party of second part before that time aforesaid.

7th. That the parties of the first part hereto shall not be liable for any debts heretofore created in said business of party of second part by him, or by Hoover and Lewis, nor hereafter created by said party of the second part, their only connection with this business being to furnish the goods to party of the second part on the terms herein expressed.

8th. That at any time when the parties of the first part have been paid their said claims due from party of the second part as herein stipulated, it shall be at the option of either of the parties hereto to treat and regard this agreement as no longer binding or of any effect; and should the parties of first part find that the said business is not paying a profit above mentioned, it shall be at their option to withdraw from this agreement, and to cease to sell goods to party of the second part on the terms herein specified. And that unless otherwise mutually agreed upon hereafter by the

parties hereto, it shall not be binding on parties of first part to sell more than $2,400 of goods under this agreement.

9th. That party of second part will renew lease of store at the end of one year according to the terms of his lease for same from E. W. Gillen, if so requested to do by parties of first part.

The salary of person placed in charge of business under paragraph 3rd herein shall be paid out of receipts of business herein referred to.

The plaintiff also introduced witnesses who testified in substance as follows: Daniel Bowen for plaintiff testified that he resided in Duval county, Fla. That he was a partner with Robert H. Jones, doing business in the city of Jacksonville under the firm name and style of Jones & Bowen; that their partnership began in 1881, and they dissolved some time in the summer of 1886. The business conducted by said Jones & Bowen was a wholesale and retail grocery business; that his partner R. H. Jones was the general manager of such business; that he (witness) had access at all times to the books of said firm; that he (witness) resided in Riverside, a suburb of Jacksonville, during the time of his copartnership with Jones. The business of said firm was large and extensive, and was not confined to the limits of the city of Jacksonville.

M. L. Hoover for the plaintiff testified that he lived in South Jacksonville, in Duval county, at and prior to September 21st, 1885; that just previous to September 21st, 1885, he was engaged in the grocery business in South Jacksonville, Duval county, Fla. The witness

was here handed and identified the above agreement between Jones & Bowen and himself, filed in evidence and referred to as "exhibit A." That J. O. Bessent was employed by Jones & Bowen previous to September 21st, 1885; that the business carried on under this agreement did not last long enough for him to be able to say that the agreement was substantially carried out in some respects it was carried out, in others it was not. During the time the business lasted it was substantially carried out. In pursuance of this agreement the firm of Jones & Bowen did place Mr. J. O. Bessent in my store in South Jacksonville in the management of the books and business carried on by me after we entered into this agreement; and, in pursuance of this agreement, my business was continued at the old place, and Jones & Bowen furnished me with goods. Mr. Bessent's services were paid for out of the proceeds of the business as provided for in this agreement. I do not recollect now whether I drew out of the business fifty dollars per month in pursuance of this agreement, or whether it amounted to more than that. J. O. Bessent, after he came there, kept the books, signed all checks, and assisted in the management of the business. From time to time Bessent paid over to Jones & Bowen moneys arising from the proceeds of the sale of goods and the business in South Jacksonville. The business was discontinued by reason of an assignment made by me to Jones & Bowen, and they were made preferred creditors in that assignment. During the continuance of that business I purchased and received goods from other parties. At the time of my assignment the business in South Jacksonville owed divers persons for goods purchased. By that assignment Jones & Bowen received all the goods and property in

35

my store in South Jacksonville. A part of the goods that were not paid for at the time of the assignment were goods purchased from the plaintiff F. J. Dubos & Co. My assignment, I think, was made in February, 1886. Mr. Bessent was accountable to Jones & Bowen for his actions in that business. I was a customer of Jones & Bowen previous to entering into this agreement with them. I made this agreement with R. H. Jones. I never talked to Mr. Bowen about it. I do not know of my own knowledge that Mr, Bowen knew anything about it. Jones & Bowen placed the clerk, Bessent, over there. I do not know of Mr. Bowen ever being over at my store after this agreement was made. I do not remember the amount of goods turned over to Jones & Bowen under my assignment to them, and can not say positively whether they were greater or less in amount and value than the debt due Jones & Bowen at the time.

J. O. Bessent for the plaintiff testified that he lived in Duval county, Fla., and that he is the same person sent to take charge of the business at that time run by M. L. Hoover in South Jacksonville. That he was sent there in September, 1885, and that he went there from the business place of Jones & Bowen by direction of that firm given to him by Mr. R. H. Jones of that firm. That he took charge and management of that business in South Jacksonville; and that during its continuance he paid over to Jones & Bowen from time to time moneys arising from the proceeds of goods sold and the general conduct of that business. During the conduct of that business goods were purchased from Dubos & Co. and others, and we bought goods from Jones & Bowen as well as from others. I considered that I was responsible to Jones & Bowen for my actions in regard to that business. I was not responsible

to Hoover. I never had any conversation with Mr. Bowen about going over there. I did not draw any salary from Jones & Bowen other than was taken from the South Jacksonville store during the continuance of that business. I do not know of my own knowledge whether Mr. Bowen knew anything about this agreement, and I never received any instructions from him as to my duties over there. I made no reports of my transactions over there further than that from time to time I paid the moneys and told how I was getting along. These statements were made to R. H. Jones. Jones & Bowen kept a set of books of their business. I did not go back to Jones & Bowen's place in Jacksonville after the business terminated in South Jacksonville.

J. S. Smith, Jr., for the plaintiff testified that he resided in Duval county. That he was at one time a partner of F. J. Dubos. That to some extent he was acquainted with the business of F. J. Dubos in December, 1885, and in January and February, 1886. That he (witness) during the months last named was doing a brokerage business for himself in Jacksonville, which business extended to merchandise; that he was agent for the Geo. S. Plant Milling Co., and carried a stock of flour on his own account. J. O. Bessent was the manager of the business carried on in South Jacksonville with which the defendants in this suit were connected in September, 1885, and February, 1886. I frequently had opportunities to sell M. L. Hoover goods, but declined to do so, but learning from Mr. Dubos and what I had seen by Mr. Bessent paying bills and having a check book and paying Mr. Dubos' bills promptly, and learning from Mr. Dubos and others that Jones & Bowen had taken charge of the business, Mr. Hoover came to me to buy twenty bar-

rels of flour, and explained to me that he was in a good fix now; that he was connected with Jones, and, to the best of my recollection, that Jones & Bowen were in partnership with him. I was led to believe that such was the case from the fact that I saw Mr. Bessent in charge of the business and paying the bills. of M. L. Hoover with a check book. I delivered him the flour, and within two or three days afterwards, certainly within less than a week, I heard of the assignment, and after hearing of it went over to the store and saw a good part of the goods at Hoover's store. I spoke to Mr. Bessent and got no satisfaction out of him, and then I went to Hoover's house that night and asked him about it, and he informed me that he could not help it, he was forced to do it, but that he would protect me. I have brought suit against Hoover, Jones & Bowen for that flour, which suit is still pending. Mr. Bessent had been formerly employed at Jones & Bowen's in the city of Jacksonville before he took charge of this business in South Jacksonville. I knew of his employment in their store in Jacksonville and of his removal to the management of the business at Hoover's before and at the time I sold the flour. Hoover had been in business for himself at the same place in South Jacksonville prior to the time Bessent took charge of the business. I supposed at the time I sold the flour that Jones & Bowen became responsible for it, because I had refused to sell Hoover before, until this connection. At the time I sold this flour I had been informed of the facts I have stated by Hoover, and it was solely upon the information and belief that Jones & Bowen were connected with the business that I made the sale. M. L. Hoover bought the flour about which I have testified, and it was billed to M. L. Hoover, I think, I have for-

gotten exactly. I never had any conversation with Mr. Bowen in regard to this alleged partnership. I never had any conversation with any person representing Mr. Bowen in which they said that he had said, or represented that he had said, that he was a member of any such partnership—Jones & Bowen and Hoover. I had often had business transactions with Jones & Bowen.

Daniel Bowen, on his own behalf, testified, after examining the agreement made by R. H. Jones in the firm name of Jones & Bowen with M. L. Hoover, that he had never signed that agreement, or authorized R. H. Jones to sign his name to it, or to sign the name of Jones & Bowen to same; that he first heard of that agreement and his first knowledge of it, was immediately after Mr. Hoover's assignment. Hoover was a customer of Jones & Bowen before that agreement was made, and was a debtor on the books of the firm; and subsequent to this agreement he continued to make purchases of goods from the firm that were charged to him as before the agreement, and he made payments thereon that were credited to him in like manner. I did not know of any change made in the keeping of the accounts between the firm of Jones & Bowen and M. L. Hoover. To my best knowledge and belief there was not any other or different account opened on the books between Jones & Bowen and Hoover other than as a general customer of the firm, with regular debits and credits the same as other customers. I dissolved partnership with R. H. Jones after the assignment of Hoover to said firm. I did not personally examine the books kept by the firm of Jones & Bowen, but I leaned upon our book-keeper for any information about the firm or about the books. The book-keeper never gave me any information from the

books in regard to the account of M. L. Hoover, or about there being any change in his accounts. I never asked him directly about this account, but I was in such relation to the book-keeper that he was bound to tell me any change that was made out of the usual course in keeping the accounts.

The foregoing is the entire evidence before the referee, as shown by the record, and upon this evidence the referee made the following findings: "1st. That the paper filed in evidence, marked exhibit A, did not constitute a copartnership as between M. L. Hoover, R. H. Jones and Daniel Bowen. 2nd. That at the time the debt sued upon herein was contracted there was no copartnership existing between M. L. Hoover, R. H. Jones and Daniel Bowen. 3rd. That the paper filed in evidence marked exhibit A constituted an agreement not within the scope of the partnership business as conducted by R. H. Jones and Daniel Bowen under the firm name and style of Jones & Bowen. 4th. That Daniel Bowen had no knowledge of the execution of said agreement. 5th. That after said agreement was made, he never ratified or confirmed the same; and, during the time he was a member of the firm of Jones & Bowen, never knew of the execution of said agreement until M. L. Hoover had made an assignment. It is therefore considered by the referee that the defendants, M. L. Hoover, R. H. Jones and Daniel Bowen, partners doing business under the firm name and style of Minard L. Hoover, go hence without day, and that they do have and recover of the plaintiff their costs herein expended, taxed," etc.

It becomes necessary to determine, first, whether the written agreement entered into between R. H. Jones on behalf of the firm of Jones & Bowen, of the one part, and M. L. Hoover of the other part, consti-

tutes a partnership in fact or *inter sese* as between Hoover, Jones and Bowen. If it does, then, it is not deniable, the defendants would be liable for the claim sued for. When the cause was before this court upon the former appeal the construction of this agreement, as to whether it did or did not constitute a partnership between these parties *inter sese*, was not presented, and was not necessary to the decision of the real question arising out of the ruling of the court below then appealed from. The court below at the former trial excluded the agreement *in toto* as evidence for any purpose, and from this ruling the former appeal was taken. This court held, and we think, with entire propriety, that the exclusion of the agreement from evidence was error. So far it was then necessary for the court to go, but no further. The agreement was properly admissible in evidence, not because, within itself, it constituted these parties partners *inter sese*, but because, by its terms, if acted upon and carried out, it placed the defendants in such an attitude towards each other as would naturally give them such a misleading appearance to the minds of third persons, ignorant of the real facts, and having dealings with them or any of them, as to induce such third persons into the reasonable *belief* that they were partners, and thereby render them liable as partners by reason of a *holding out* as such, when they were not partners in fact. It was pertinent as a link in the chain of circumstances that tended to establish a *holding out* by the defendants as copartners; and, to this extent, *it tends*, in the language of the court in the former decision of the cause, to show a partnership between the parties. We do not think the agreement constituted these parties partners *inter sese*. It provides, it is true, for a division between them of the *profits* of

the business; and the law at one time in England, and in some of the American courts, treated such *sharing of profits* as the true test that established a partnership; particularly so as to third persons (Waugh vs. Carver, 2 H. Blackstone, 235), but this doctrine has become entirely obsolete, and is no longer law either in England or in this country. Cox vs. Hickman, 8 H. L. Cases, 268; Denny vs. Cabot, 6 Met., 82; Parchen vs. Anderson, 5 Montana, 438; Culley & Son vs. Edwards, 44 Ark., 423; Eastman vs. Clark, 53 N. H., 276; Boston & Colorado Smelting Company vs. Smith, 13 R. I., 27; Beecher vs. Bush, 45 Mich., 188; Meehan vs. Valentine, 145 U. S., 611; Plunkett vs. Dillon, 4 Del. Chy., 368; Greend & Wehrmann vs. Kummel, 41 La. Ann., 65; *Ex parte* Tennant, *In re* Howard, L. R. 6 Chy. Div., 303; Mollwo, March & Co. vs. Court of Wards, L. R. 4 Privy Council App. Cas., 419; Polk vs. Buchanan, 5 Sneed (Tenn.), 721. This agreement upon its face, and in express terms, repudiates the idea of a partnership between the parties *inter sese*, and shows clearly that the status thereby between Jones & Bowen on the one hand, and Hoover on the other, is that merely of debtor and creditor. The goods to be put thereby into the business of Hoover by Jones & Bowen were in no sense contributions of theirs as principals to the capital stock of the business, but were sold by them to Hoover, who thereby and therefor became their debtor. Hoover, in any event, is obligated theirby to pay to Jones & Bowen the price of all goods sold or advanced by them to him. The share of Jones & Bowen in the profits to be realized by Hoover out of the business is expressly stated in the agreement to be in consideration of the fact that Jones & Bowen are to sell him goods at the lowest wholesale market price, and in consideration of the time extended

to him for payment of goods for which he theretofore already owed them, and for goods thereunder to be sold to him in future. The provisions in the agreement authorizing Jones & Bowen to put a person in Hoover's store in charge and control of the business and books, and that no debt should be incurred by Hoover in the business without their consent, and limiting Hoover to an allowance of fifty dollars per month for his own expenses, and that the proceeds of sale of goods should be carefully kept and paid over each week to Jones & Bowen upon the indebtedness due them and to others, are all measures of security, and do not alter the relationship of debtor and creditor existing between the parties. The whole agreement, in all of its provisions, shows clearly that Hoover was already the debtor of Jones & Bowen, and that he was to continue to be such debtor, and in a larger sum; and that the instrument was designed to secure Jones & Bowen in the payment of that indebtedness. The law is now well-settled that where a person loans or advances money or goods to another to be invested in some business or enterprise, the lender to share in the profits as or in lieu of interest on, or in repayment of such loan or advance, does not constitute a partnership; neither will it constitute a partnership as to third persons unless the acts of the parties in furtherance of the agreement between themselves amount to such a holding of themselves out as partners as that third persons are misled into a reasonable belief that a partnership exists in fact. To constitute a loan, the money advanced must be returnable *in any event*. It is not a loan if *repayment is contingent upon the profits*, for in such case it is made, not upon the personal responsibility of the borrower, but upon the security *of the business*. Neither must the transac-

tion be a mere device to obtain the benefits of a part-
nership without incurring its responsibilities, for in
such case, whatever else the parties may call it, it will
be construed to be a partnership.    Authorities *supra;*
17 Am. & Eng. Ency. of Law, p. 850 *et seq.* and cita-
tions.    Mollwo, March & Co. vs. Court of Wards,
*supra*, is very similar in its facts to the case under
consideration; and, after an elaborate discussion of the
law, it was there held that a similar agreement did not
constitute a partnership *inter sese* or as to third per-
sons.

The agreement under considaration provides, as be-
fore stated, for the repayment, *in any event*, by Hoover
of the advancements made to him by Jones & Bowen,
and we do not think it subject to the charge of being a
mere subterfuge to secure the benefits of a partnership
minus its responsibilities.    The conclusion reached by
the referee, to the effect that this agreement, within
and of itself, did not constitute Hoover, Jones and
Bowen partners *inter sese*, or as to third persons, we
think was correct.    Parties, however, who can not be
regarded as partners as between themselves, may, never-
theless, under certain circumstances, growing out of
their acts, declarations and dealings, be regarded as
such as to third persons.    Thus a person *holding him-
self out* as a partner in a firm, or permitting himself to
be so held out, will be held liable as such as to third
parties, whatever may have been his actual relations
with the firm or its members.    The doctrine now in the
ascendency, however, is that one not a partner in fact
can not be held liable to third persons on the ground
of having been *held out* as such, except upon the
principle that where third persons have been misled by
such holding out, he is equitably estopped from deny-
ing that he is a partner, and consequently he is now-

held liable, as a general rule, *only to such persons as have been misled by or who have acted upon such holding out;* or, as it is expressed by Justice Gray, in Thompson vs. First National Bank of Toledo, 111 U. S., 529: "A person who is not in fact a partner, who has no interest in the business of the partnership and does not share in its profits, and is sought to be charged for its debts because of having held himself out, or permitted himself to be held out, as a partner, can not be made liable upon contracts of the partnership except with those who have contracted with the partnership upon the faith of such holding. In such a case the only ground of charging him as a partner is, that by his conduct in holding himself out as a partner he has induced persons dealing with the partnership to believe him to be a partner, and, by reason of such belief, to give credit to the partnership. As his liability rests solely upon the ground that he can not be permitted to deny a participation which, though not existing in fact, he has asserted, or permitted to appear to exist, there is no reason why a creditor of the partnership, who has neither known of nor acted upon the assertion or permission, should hold as a partner one who never was in fact, and whom he never understood or supposed to be, a partner, at the time of dealing with and giving credit to the partnership." The same judge says further in the same case that "there may be cases in which the holding out has been so public and so long continued that the jury may infer that one dealing with the partnership knew it and relied upon it, without direct testimony to that effect." 17 Am. & Eng. Ency. of Law, pp. 879, 880, 881 and citations.

It seems to be well settled also that the question whether the plaintiff was induced to change his posi-

tion or to extend credit by acts or declarations done or made by the defendant or by his authority is, as in other cases of estoppel *in pais*, a question of fact for the jury, and not of law for the court. Thompson vs. First National Bank of Toledo, *supra;* 17 Am. & Eng. Ency. of Law, p. 882; 1 Lindley on Partnership, sec. 53; Wood vs. Duke of Argyle, 6 Man. & Gr., 928; Lake vs. Duke of Argyle, 6 Q. B., 477.

We have already seen that the agreement between the firm of Jones & Bowen on the one hand and Hoover on the other did not, in and of itself, constitute them partners *inter sese* or as to third persons, but that its provisions, if carried out, involved the performance of such acts by the defendants as would tend to constitute such a holding of themselves out as partners as that third persons might readily be misled into the belief that they were partners in fact, and upon the strength thereof might extend credit to them as such, in which event the law would hold them liable as such, and they would be estopped to deny it. The feature of the agreement tending most strongly to this result is the provision for Jones & Bowen placing their agent in charge and control of the books and business carried on by Hoover, and taking charge of the funds arising from the sale of goods and paying it out to the creditors of Hoover, and their control over the incurment of debts in the business by Hoover. All of these things tend strongly to mislead third persons into the belief that they were responsible for the business and its liabilities; but, as before shown, in order for them to be liable to third persons as partners when they are not such in fact, in consequence of a *holding out* as such, it is incumbent upon the party seeking to establish the liability to show that *he has been misled by the holding out*, and that he has been induced thereby

to extend credit upon the belief, created by the acts or declarations of the defendants, or, by their permission, through the acts or declarations of others, that they were partners. Does the proof show that Mr. Dubos, the plaintiff here, ever had any knowledge of any of these acts on the part of the defendants, Jones & Bowen, that tended to constitute a holding out of themselves as partners in Hoover's business; or that he was misled thereby into a belief that they were partners, or at all responsible for Hoover's purchases; or that he extended the credit to Hoover on the faith of such belief? We think not. The only evidence that even tends to show that Dubos knew anything at all of any connection of theirs with Hoover or with Hoover's business, is the indirect evidence of the witness J. S. Smith, Jr., to the effect that he (Smith) had learned from Mr. Dubos and others that Jones & Bowen had taken charge of the business of Hoover, and that Bessent had a check-book and paid Dubos' bills promptly. All this may be valuable to establish a case of partnership by holding out in so far as J. S. Smith, Jr., is concerned, if it induced him to part with the twenty barrels of flour that he swears he on his own account, sold to Hoover, but we can not see that it helps Dubos. For aught else that is shown in the record before us, Dubos, when he told the witness Smith that Jones & Bowen had taken charge of the business of Hoover, may have been fully informed as to the real status of affairs between the parties; and may have known that Jones & Bowen were not in fact liable for extensions of credit made by him to Hoover; and there is nothing to show that Dubos extended the credits sued for upon the belief, created by any acts or declarations of Jones & Bowen, that they were partners of Hoover, and responsible for goods that he sold

the latter. Indeed, there is nothing to show but that Dubos may have sold the goods sued for to Hoover upon his own individual credit and with full knowledge that Jones & Bowen were not liable therefor to any extent. Under these circumstances Mr. Dubos can not recover of Jones & Bowen upon the theory of their having held themselves out as partners of Hoover. He has failed entirely in his proof to show that any declarations or acts upon the part of Jones & Bowen have so misled him into a belief that they were partners of Hoover as to induce him to extend credit to the latter, and that would operate as an estoppel upon them to gainsay their liability as partners. From the conclusions announced it becomes unnecessary to pass upon the *third* finding of the referee to the effect that the agreement referred to as exhibit "A" was not within the scope of the partnership between Jones and Bowen.

There are some assignments of error upon the rulings of the referee in refusing certain questions to M. L. Hoover as a witness for plaintiff, and in permitting other questions to be answered by Bowen on behalf of the defense, but as none of this evidence, included or excluded, tended at all to mend the defects already pointed out in the plaintiff's case upon the facts, we deem it unnecessary to touch upon them further.

The judgment appealed from is affirmed.