CHARLES MAYER v. EASTWOOD, SMITH & COMPANY, INC.; R. E. OLDS; NEW AMSTERDAM CASUALTY COMPANY; FLORIDA BANK AT ORLANDO, *et al.*

164 So. 684.
Opinion Filed December 17, 1935.

*George M. Garrett,* for Appellant;

*T. M. Shackleford,* for Appellees.

DAVIS, J.—Mayer, the appellant, was complainant in the court below in a suit in equity wherein he sought a money decree holding the appellee, R. E. Olds, individually responsible for an obligation that had been incurred to him in writing by a corporation described in the pleadings as Eastwood, Smith & Company with reference to certain of appellant's bonds that appellant had loaned to the corporation under a promise to return them to him on demand. From a final decree for the defendant, Olds, entered by the Chancellor upon the merits of the case as disclosed at the final hearing upon bill, answer and testimony taken and submitted, this appeal has been entered and is now before the Court for its determination.

Briefly stated, the facts in the case were about as follows: One R. E. Olds owned some two million dollars par value Florida bonds, and to "better his position" here in Florida he made a deal with one Dan W. Eastwood and one F. Burton Smith, operating a bond business under the name of Florida Securities Bureau, Inc., supplying $1,500,-000.00 of his bonds, with which to operate a general Florida bond business. He then made three agreements in writing setting out that the $1,500,000.00 par value bonds were loaned with two purposes, viz.: $150,000.00 of the bonds were to be pledged as collateral for bank loans to be obtained so as to furnish current finances with which to conduct the general bond business of the company. Another $1,000,000.00 par value of bonds was to constitute a revolving "safe-keeping trust" through the medium of which Florida bonds of all kinds could be bought, sold and exchanged. The third agreement was that the said R. E. Olds was to receive twenty-five per cent. of all the net profits made by the corporation.

A short time after these agreements were made Mr. Olds suggested that the name of Florida Securities Bureau, Inc., be changed to Eastwood, Smith & Company to give the company personality.

Instead of merely changing the name of the company as suggested by Mr. Olds, Eastwood and Smith formed a new corporation under the name of Eastwood, Smith & Company, Inc., and operated it in conjunction with Florida Securities Bureau, Inc., as an affiliated corporation. Gradually the new company, Eastwood, Smith & Company, Inc., absorbed the old company of Florida Securities Bureau, Inc. Olds made identically the same agreements with the new company as he had made with the old company of Florida Securities Bureau, Inc.

From time to time Olds made many "suggestions" as to the management of Eastwood, Smith & Company. Some of such suggestions concerned the following attributes of the business; that the name of Florida Securities Bureau, Inc., be changed to Eastwood, Smith & Company; that the manner of bookkeeping be improved; that the personnel within the organization conform to a certain standard of efficiency. All of Mr. Olds' suggestions were materially followed.

Mr. Olds also required that his personal representative act as one of the officers of the corporation and deducted part of such officer's salary from his profit account in said organization. He likewise became interested in the affairs of the corporation by furnishing the necessary bonds to deposit with and protect the New Amsterdam Casualty Company as surety on a bond given by Eastwood, Smith & Company to qualify as a securities dealer under the Florida "Blue Sky" law. Moreover, he suggested that they cut their overhead and demonstrated how it would be possible to do so. In the declining months of the company's prosperity as a business concern, Olds also suggested that Eastwood buy out Smith and his suggestion was complied with.

Prior to the transaction with plaintiff, which affords the basis for this suit to charge Olds with liability respecting it, Olds had all of the stock of Eastwood, Smith & Company transferred to him as "security for the amounts due him from Eastwood, Smith & Co." Finally just before the company closed its doors he suggested that Eastwood leave the company and that Newton, an officer and his, Olds' personal representative in the firm, take over the management of the same. This was done and the company failed while in Newton's hands.

Although the holder of the assigned stock, Olds did not

in any way use the stock so assigned to him. There was no compulsion used by Olds by reason of holding the Eastwood, Smith & Company stock in having his suggestions carried out or in ousting Eastwood from the corporation. Eastwood retired in favor of Newton because he believed that in so doing Olds would put more money into the company and thereby save it and the name of Eastwood from being connected with a failure.

The plaintiff, Mayer, had full knowledge of all the foregoing circumstances prior to the retirement of Eastwood. Eastwood, as president of the company at the time of the loan, told Mayer of these conditions and that Olds had all of the stock of the company in his possession.

In the belief that Olds would be personally responsible for the company's obligation, Mayer loaned the corporation of Eastwood, Smith & Company some of his Orlando bonds and Eastwood pledged them for a loan to the company. After Eastwood, Smith & Company had become insolvent, Mayer sought in this suit to hold Olds individually responsible for the obligation of Eastwood, Smith & Company to Mayer on the grounds: (1) That there was no corporate entity, because there is no showing that the stock was paid in and that therefore Olds is liable as a partner of Eastwood, and Smith; (2) that Olds is liable as a partner of Eastwood, Smith & Company; (3) that Olds became liable to Mayer as being the sole owner of the business of Eastwood, Smith & Company, Inc., at the time that the debts of Eastwood, Smith & Company to Mayer were contracted, using the corporate vehicle of said company as a fiction to conceal his personal liability for the debts of said company; (4) that Olds became liable as a joint adventurer with the company or with Eastwood and Smith individually; (5) that Olds was the undisclosed principal of Eastwood, Smith &

Company, Inc., in its dealings with Mayer; (6) that Olds was the sole owner of all of the stock in this unincorporated concern at the time the debts were incurred; (7) and finally, that the bonds furnished by H. E. Olds to be used as collateral with the New Amsterdam Casualty Company, the surety on the "Blue Sky" bond of Eastwood, Smith & Company, Inc., be subjected by Mayer to the payment of Mayer's claim, because Olds permitted Eastwood, Smith & Company to hold them out to the said surety as the property of said company.

In deciding against appellant, Mayer the Chancellor below made the following specific findings in his final decree:

"THE COURT FINDS THAT:

"The plaintiff is entitled to a judgment against the defendant, Eastwood, Smith and Co., Inc., for the amount claimed by the plaintiff, namely, $1,786.67, on the contract of July 27, 1933, set out in the bill, together with interest thereon at the rate of 8 per cent. per annum, from August 10, 1933, the time when the $3,000.00 par value bonds loaned under said contract were to be returned, to the present date. Plaintiff is also entitled to a judgment against Eastwood, Smith & Co., Inc., for the sum of $3,000.00, pursuant to the contract of June 27, A. D. 1933, set out in the bill, plus interest on said sum of $3,000.00 at 8% per annum, from July 27, A. D. 1933, the date when said bonds were to be returned under said contract. * * *

"It is, thereupon, Considered by the Court that Charles Mayer do have and recover of and from Eastwood, Smith & Co., Inc., the said sum of $5,534.62, for which let execution issue as at law.

"The Court finds that the transactions disclosed by the evidence did not render R. E. Olds personally liable for the said debts of Eastwood, Smith & Co., Inc., to Charles

Mayer hereinbefore set out as due on the above contracts. In this connection, the Court is of the opinion and so finds that the loan by R. E. Olds of $6,000.00 of Columbia County bonds to Eastwood, Smitth & Co. to be used by Eastwood, Smith & Co. in securing the New Amsterdam Casualty Company for obligating itself as surety on the Blue Sky bond of Eastwood, Smith & Co., Inc., is not such a loan as that by virtue thereof, the doctrine of the case of Ashley v. Rowe, 1933, 101 Fla. 110, 133 So. 551, applies.

"The Court has considered each of the five several bases of personal liability of R. E. Olds, for said debts of Eastwood, Smith & Co., Inc., claimed by the plaintiff, namely:

"1. That R. E. Olds was a partner of Dan W. Eastwood and F. Burton Smith in a partnership known as Eastwood, Smith & Co. under a provision whereby he was to share in the profits of the business, and hence was liable for the debts of the partnership.

"2. That R. E. Olds was a member of a partnership consisting of himself and a corporation known as Eastwood, Smith & Co., Inc., under the terms of which partnership, he was to share in the profits of the business, and hence was liable for the debts of the partnership.

"3. That, at the time that Mayer had the transactions with Eastwood, Smith & Co., Eastwood, Smith & Co., Inc., was a corporation or business entity wholly owned and controlled by, and run in the interest of R. E. Olds, individually, and hence R. E. Olds was individually liable for the debts of the concern.

"4. That R. E. Olds was liable to Charles Mayer for said debts of Eastwood, Smith & Co., Inc., because he was a joint adventurer with Eastwood, Smith & Co., Inc., in the bond business.

"5. That R. E. Olds was liable to Charles Mayer for said debts of Eastwood, Smith & Co., Inc., because he was the undisclosed principal of Eastwood, Smith & Co., Inc., in its dealings with Charles Mayer.

"The Court has determined that, while the plaintiff may have ·a right under its pleadings, as framed, to a decree if any of the above five bases of liability was in' fact established, the Court finds from the evidence and exhibits in this case that none of the said several five bases of liability has been established.

"IT IS THEREUPON CONSIDERED BY THE COURT, that the said bill of complaint be, and it is, hereby dismissed as to all parties defendants, save Eastwood, Smith & Company, Incorporated. * * *"

One of the strongest points in appellant's case is the fact that Olds was to receive 25% of the total net profits of the firm. "The law at one time in England, and in some of the American Courts treated such sharing of profits as the true test that established a partnership, particularly so as to third parties. This doctrine has become entirely obsolete, and is no longer the law either in England or in this country." Dubos v. Jones, 34 Fla. 539, 16 Sou. Rep. 392, and authorities too numerous to mention.

In Dubos v. Jones, *supra,* the agreement was that the firm of Jones and Bowen would sell and deliver to Hoover such groceries and goods usually kept in a grocery store. The goods were to be sold to Hoover at the lowest wholesale market price and one-half of the profits made on the sale of said goods was to be paid to Jones and Bowen in consideration of the time extended in payment for said goods, and in time extended in payment of debts now due to them; that Jones and Bowen be allowed to place a person in said store to have control and manage the books and business

carried on and that no debt should be created without their consent; that Hoover should draw $50.00 per month plus one-half of the net profits before provided, *et cetera.*

In the above case the court held that there was no partnership. In the instant case the 25% profit to be paid Olds was in consideration of the use of his bonds as provided by agreement for the raising of capital, and in and for consideration of the business that he gave them.

In the case before us, Olds owned absolutely nothing in common with either Smith or Eastwood, nor with Eastwood, Smith and Company; there was never an intention on either side that there should be a partnership or that Olds was to own any of the Eastwood, Smith and Company stock nor does the record even hint at such an intention. All that Olds was interested in was seeing that his bonds were properly handled. There is no suggestion of intention on either side that they form a partnership or that they were in fact partners. There is nothing in the agreements, nor in the evidence to indicate any intention that Olds should share in any losses that might occur. Olds was never in any way held out as a partner. Plaintiff knew that he was dealing with a corporation, but simply states that he thought Olds would be personally responsible because of the fact that at that time he had all of the stock in his possession. This certainly does not make out any case of partnership.

We next consider the question: "Did Olds use the corporate vehicle as a fiction to conceal his personal liability?"

In Biscayne Realty & Ins. Co. v. Ostend Realty Co., 109 Fla. 1, 148 Sou. Rep. 560, it was said on this proposition:

"So long as proper use is made of the fiction that corporation is unity apart from stockholders, fiction will not be ignored * * *. Where stockholders enter into a transaction in individual interests and utilize corporate name merely

to mislead creditors or perpetrate fraud, legal entity will be ignored and stockholders held individually liable * * *. The rule that corporate entity will be disregarded where name of corporation is used by stockholders in transactions to mislead creditors or perpetrate fraud on them is but a logical sequence of the principle that a corporation cannot be formed for the purpose of accomplishing fraud or other illegal act, under the guise of fiction that the corporation is legal entity separate and distinct from its members, since when fraud or illegal act is attempted, fiction will be disregarded by the court and the acts of the real parties dealt with as though no corporation had been formed."

The overwhelming weight of authority is to the effect that courts will look through the screen of corporate entity to the individuals who compose it in cases in which the corporation was a mere device or sham to accomplish some ulterior purpose, or is a mere instrumentality or agent of another corporation or individual owning all or most of its stock, or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose.

Nothing like that exists in this case.

Mr. Olds was not one of the individuals composing that corporation; he owned none of the stock, and in the end, he merely held the stock as security and never made use of or claimed any ownership in it. There is no evidence of any purpose on the part of Mr. Olds to evade any statute or accomplish any fraud. Nor did the evidence show any other illegal design or purpose. He did not direct the transaction with the plaintiff, nor is there any evidence that he even knew of any such deal until long after it was consummated.

Nor was Olds any more a joint adventurer than he was a partner. Drew v. Hobbs, 104 Fla. 427, 140 Sou. Rep.

211; Tidewater Const. Co. v. Monroe County, 107 Fla. 648, 146 Sou. Rep. 209; Willis v. Fowler, 102 Fla. 35, 136 Sou. Rep. 358.

In regard to appellant's contention that Olds was the undisclosed principal of Eastwood, Smith and Company in its dealings with Mayer, Eastwood testified that there was no question but that the loans from Mayer were used in and about the business of Eastwood, Smith and Company, Inc. Mayer admitted in his testimony that he lent the bonds to Eastwood, Smith and Company, knowing that it was a corporation and the testimony of Mr. Eastwood shows that the bonds loaned by Mr. Mayer were used exclusively in the business of said corporation. There is no testimony that Eastwood, Smith and Company was the agent of or in any way acted for Mr. Olds in this transaction. The plaintiff, Mayer, testified that he never knew Olds nor had he ever communicated with him, and further states that to his knowledge Mr. Olds knew nothing of the transaction. Mr. Olds testified that he knew nothing of the loan, had nothing to do with it, and that Eastwood had no authority to connect him with the deal.

Nor is there any merit in the appellant's contention that the Columbia County bonds pledged with the New Amsterdam Casualty Company as security for the bond they issued Eastwood, Smith and Company under and in compliance with the Florida "Blue Sky" law could or should be subjected to his claim. There is no holding out to the public that these bonds belonged in any way to Eastwood, Smith and Company. The bonds were lent to Eastwood, Smith and Company for the particular purpose of securing the bond issued by the New Amsterdam Casualty Company for the protection of those who dealt with Eastwood, Smith and Company in buying securities.

Eastwood, Smith and Company did not hold the bonds and neither it nor anyone on its behalf has paid or was called upon to pay anything out because of the pledge of these bonds. These bonds were lent for a particular purpose and used for that purpose exclusively; Mayer was in no way misled by them and in fact did not know of this loan. Under these circumstances, the contention of the appellant is clearly not well taken as to the last point.

The case established by the evidence is simply one wherein it was made to appear that while defendant Olds no doubt absolutely controlled and dominated the management of Eastwood, Smith and Company, Inc., because he was, throughout its period of good business success, that company's best customer and had by his giving to that company his own bond account raised it in prestige and affluence from a comparatively small concern to a concern of large affairs, yet, nevertheless, the appellant Mayer, with full knowledge of all the facts as previously communicated to him by the president of Eastwood, Smith & Company, Inc., used his own independent business judgment in lending to Eastwood, Smith & Company, Inc., certain bonds which he has not been repaid because of that corporation's insolvency. Under such circumstances, it cannot be said that R. E. Olds ever became individually responsible for the obligation of Eastwood, Smith & Company to Mayer, hence the Circuit Court's decree refusing to mulct Olds in a money judgment for the corporate liability of the last mentioned company was entirely justified by the applicable law and the evidence.

Affirmed.

WHITFIELD, C. J., and ELLIS, TERRELL, BROWN and BUFORD, J. J., concur.