450 So.2d 1114 (1984)
DANIA JAI-ALAI PALACE, INC., Carrousel Concessions, Inc., and Saturday Corporation, Petitioners,
v.
Gladys SYKES, Respondent.
No. 63394.
Supreme Court of Florida.
May 3, 1984.
Rehearing Denied June 27, 1984.
*1115 Guy B. Bailey, Jr. and Sara Soto of Bailey & Dawes, Miami, for petitioners.
Gilbert A. Haddad of Haddad, Josephs & Jack, Coral Gables, for respondent.
SHAW, Justice.
This cause is before the Court on petition for review based on grounds of express and direct conflict between the decision of the district court below, Dania Jai-Alai Palace, Inc. v. Sykes, 425 So.2d 594 (Fla. 4th DCA 1982), and numerous decisions of this Court. We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
Dania Jai-Alai Palace, Inc. (Dania) owns and operates a jai-alai fronton. Certain aspects of the business, including valet parking, are handled by a sister corporation, Carrousel Concessions, Inc. (Carrousel). Both Dania and Carrousel are wholly owned subsidiaries of Saturday Corporation (Saturday). Respondent Sykes arrived at the fronton on 15 December 1977. Respondent pulled into a short line of cars awaiting parking and purchased a parking ticket from a Carrousel attendant. Respondent *1116 alighted from her car and the attendant entered the car to park it. Respondent walked to the front of her car and turned right, between her car and the car ahead, toward the fronton entrance. Simultaneously, the attendant shifted the car into drive, saw respondent in the space (approximately four feet) between the two cars and attempted to brake. His foot slipped from the brake onto the accelerator and the car moved forward, crushing respondent between the two cars.
Respondent sued all three corporations. The theories of her case were that Carrousel was liable for the negligence of its parking attendant and for independent negligence, that Dania was liable under alternative rationales of premises liability, apparent agency or single business entity, and "alter ego" or "mere instrumentality," and that Saturday was liable because Carrousel and Dania were its mere instrumentalities. At the conclusion of the evidence, the trial court directed verdicts against Carrousel on employee negligence, against Dania on finding that the public had been led to believe the fronton was a single entity, and in favor of respondent on the issue of comparative negligence. The trial court submitted the issues of Saturday's liability for the acts of its subsidiary corporations and the amount of respondent's damages to the jury. The jury returned a verdict against Saturday and the two subsidiary corporations for $775,000.
On appeal, the district court affirmed the judgment against Carrousel for the negligence of its employee on the basis that there is a rebuttable presumption of negligence when the driver of a vehicle strikes another vehicle in the rear. Brethauer v. Brassell, 347 So.2d 656 (Fla. 4th DCA 1977); Lincoln v. Miggins, 249 So.2d 88 (Fla. 3d DCA 1971). We have no quarrel with the district court's statement of the law, but find it inapplicable to the facts of this case. Petitioners were sued by respondent, who walked between the two cars, not by the driver of the car ahead which was struck from the rear. In this connection, we note that the district court reversed the trial court's directed verdict finding that respondent was not comparatively negligent in walking between the two cars. This suggests that respondent might have prevented the accident by not walking between the cars. The basis for the rebuttable presumption is that the driver of the struck vehicle could have done nothing to prevent the collision. The presumption is inapplicable to a pedestrian who might have prevented the collision. We quash the district court's holding on this point.
The district court affirmed the judgment against Saturday on the ground that Carrousel and Dania were mere instrumentalities of Saturday and that it was not necessary to establish fraud or other wrongdoing on the part of Saturday under the mere instrumentality doctrine. At trial, respondent's counsel stipulated that there was no wrongdoing or fraud involving Saturday and that the theory of respondent's case was that the mere instrumentality doctrine alone, without improper conduct, was sufficient to permit piercing of the corporate veil. The issue of whether, as a matter of law, it was necessary to show wrongdoing or fraud on the part of Saturday in order to pierce the corporate veil was thus squarely posed. The district court recognized that there were conflicting lines of cases on this point, but relied on Vantage View, Inc. v. Bali East Development Corp., 421 So.2d 728 (Fla. 4th DCA 1982), and the cases cited therein (Levenstein v. Sapiro, 279 So.2d 858 (Fla. 1973); Aztec Motel, Inc. v. State ex rel. Faircloth, 251 So.2d 849 (Fla. 1971); Barnes v. Liebig, 146 Fla. 219, 1 So.2d 247 (1941); Mayer v. Eastwood-Smith & Co., 122 Fla. 34, 164 So. 684 (1935)), for the proposition that it is not necessary to show improper conduct in order to pierce the corporate veil. We acknowledge that there is language in this line of cases which seems to support the holding of the district court, but find on closer examination that each of them is distinguishable on fact or law from the present case.
*1117 In Vantage View, the district court reversed a trial court's dismissal for failure to state a cause of action against a parent corporation for the acts of its subsidiary. The court grounded its reversal on the mere instrumentality doctrine alone, without improper conduct. The court's justification for piercing the corporate veil ignores salient facts upon which it prefaced its analysis:
We said earlier that the ultimate facts alleged by appellant are: (1) the parent established the subsidiary as a mere instrumentality and a sham; and (2) the parent did so to mislead creditors and to avoid liability.

Vantage View, 421 So.2d at 733 (emphasis supplied). Thus, there was clearly an allegation of improper conduct on the part of the parent corporation. The issue which the court posed for itself was hypothetical and its answer dicta. However, its decision was correct because allegations of mere instrumentality and improper conduct clearly state a cause of action.
In Mayer, the seminal case on which the district court relied, an individual (Olds) loaned certain valuable bonds to a corporation in return for 25% of the net profits of the corporation. All of the stock of the corporation was given to Olds to hold as security for the amounts due him. When the corporation went bankrupt, Olds was sued for its debts under various theories: partnership; wholly owned corporation controlled by and run in interest of Olds; joint adventure; and undisclosed principal. All of these theories were rejected on the facts. In examining whether Olds used the corporate vehicle as a fiction to conceal his liability, we relied on Biscayne Realty & Insurance Co. v. Ostend Realty Co., 109 Fla. 1, 148 So. 560, 564 (1933).
So long as proper use is made of the fiction that corporation is entity apart from stockholders, fiction will not be ignored * * *. Where stockholders enter into a transaction in individual interests and utilize corporate name merely to mislead creditors or perpetrate fraud, legal entity will be ignored and stockholders held individually liable * * *. The rule that corporate entity will be disregarded where name of corporation is used by stockholders in transactions to mislead creditors or perpetrate fraud on them is but a logical sequence of the principle that a corporation cannot be formed for the purpose of accomplishing fraud or other illegal act, under the guise of fiction that the corporation is legal entity separate and distinct from its members, since when fraud or illegal act is attempted, fiction will be disregarded by the court and the acts of the real parties dealt with as though no corporation had been formed.
Mayer, 122 Fla. at 42-43, 164 So. at 687. We then went on:
The overwhelming weight of authority is to the effect that courts will look through the screen of corporate entity to the individuals who compose it in cases in which the corporation was a mere device or sham to accomplish some ulterior purpose, or is a mere instrumentality or agent of another corporation or individual owning all or most of its stock, or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose.
Nothing like that exists in this case. Mr. Olds was not one of the individuals composing that corporation; he owned none of the stock, and, in the end, he merely held the stock as security and never made use of or claimed any ownership in it. There is no evidence of any purpose on the part of Mr. Olds to evade any statute or accomplish any fraud. Nor did the evidence show any other illegal design or purpose. He did not direct the transaction with the plaintiff, nor is there any evidence that he even knew of any such deal until long after it was consummated.
Nor was Olds any more a joint adventurer then [sic] he was a partner. Drew v. Hobbs, 104 Fla. 427, 140 Sou. Rep. 211; Tidewater Const. Co. v. Monroe County, 107 Fla. 648, 146 Sou.Rep. *1118 209; Willis v. Fowler, 102 Fla. 35, 136 Sou.Rep. 358.

Id. at 43-44, 164 So. at 687 (emphasis supplied).
A close reading of the above excerpt leads to several conclusions. First, Biscayne Realty & Insurance Co., on which we relied in Mayer, requires improper action on the part of the corporation or its members before the corporate veil may be pierced. Second, the reference to "or is a mere instrumentality" (emphasis supplied) is drawn from unspecified authority. Its significance goes to the factual issue of whether Olds owned all or any of the corporate stock and the legal issues or theories of whether Olds was a stockholder, a partner, a joint adventurer, or an undisclosed principal. We found that Olds owned none of the stock, held it only as security, never made use or claimed ownership of the stock, and did not commit any improper act. In other words, Olds had no relationship with the corporation under any theory that would warrant holding him liable for the debts of the corporation and had not committed any improper act. This reading of Mayer is supported by Riesen v. Maryland Casualty Co., 153 Fla. 205, 14 So.2d 197 (1943), where we directly faced the question of whether the corporate veil could be pierced without a showing of improper conduct and reiterated that in Biscayne Realty & Insurance Co.:
[T]his Court held that so long as proper use is made of the fiction that a corporation is an entity apart from its stockholders, the fiction will not be ignored, yet where stockholders enter into a transaction in their individual interest and utilize the corporate name merely to mislead creditors or perpetrate a fraud, the legal entity will be ignored and the stockholders held individually liable.
Riesen, 153 Fla. at 208, 14 So.2d at 199.
In analyzing Barnes, the Vantage View court misperceived the issue. The issue was not whether the alter ego theory required a showing of improper conduct, but rather "whether liability of a corporation can be predicated on the alter ego theory in an action at law, or whether this doctrine is exclusively an equitable one." Barnes, 146 Fla. at 235, 1 So.2d at 253 (emphasis supplied). Looking more closely at the Alabama case[1] on which the Barnes court relied, we see that the two corporations were a sham, that the negligent employee worked for both corporations, and that the ambulances, hearses, and other properties of the two corporations were used interchangeably without regard to corporate identity. In other words, the stockholders and the corporations improperly disregarded the corporate identities. The Vantage View court overlooked the fact that the Barnes court also cited a Florida case which explicitly stated that wrongdoing must be shown before the corporate veil may be pierced, and that the action may be maintained at law as well as equity.
In the case of Bellaire Securities Corp. v. Brown, 124 Fla. 47, 168 So. 625, we quoted with approval from Professor Wormser's treatise on "Disregard of the Corporate Fiction," page 84, reading in part as follows:
"When the conception of corporate entity is employed to defraud creditors, to evade an existing obligation, to circumvent a statute, to achieve or perpetuate monopoly, or to protect knavery or crime, the courts will draw aside the web of entity, will regard the corporate company as an association of live, up-and-doing, men and women shareholders, and will do justice between real persons. This is particularly true in courts of equity, but finds many illustrations in courts of law as well, for it must not be thought that `Our Lady of the Common Law,' is not sufficiently powerful to explode sophistry or scholastic theory where used as a cloak for wrongdoing."

Barnes, 146 Fla. at 238, 1 So.2d at 254 (emphasis in original). What the Alabama and Florida cases have in common is their holding that the corporate veil may be pierced at law as well as equity, which was *1119 the pertinent issue in Barnes. The Vantage View analysis would have us believe that this Court in Barnes adopted the view that the corporate veil may be pierced without a showing of improper conduct, based on an Alabama case which did not comment on the issue and in contradiction to a Florida case from this Court which explicitly held to the contrary. See also Riesen, issued two years after Barnes, in which it was held that the corporate entity would be respected, absent a showing of wrongdoing.
In Aztec Motel, Inc. v. State ex rel. Faircloth, 251 So.2d 849 (Fla. 1971), we recognized that illegal acts of all the stockholders or members of a corporation, acting as individuals, instead of by formal corporate actions, could be grounds for revoking the charter of the corporation, but that statutes which permitted revocation of the corporate charter because of the illegal acts of less than all the stockholders or members of the corporation violated due process and were unconstitutional and void. Aztec Motel factually involves illegal acts. The prefatory comments we made, to mere instrumentality or agent of another corporation or individual owning all or most of its stock, were excerpted from Mayer merely to show that the corporate veil is not inviolate. Aztec Motel does not hold or stand for the proposition that the corporate veil may be pierced without a showing of improper conduct.
In Levenstein v. Sapiro, 279 So.2d 858 (Fla. 1973), Sapiro, the sole shareholder, conveyed the title of land to his wholly-owned corporation. The land constituted the corporation's sole asset, and after the corporation sold the land to Levenstein, the corporation was immediately dissolved. The sale contract to Levenstein contained assurances as to the availability of adequate water and sewer facilities. It later developed that adequate water and sewer facilities were not available and, in the absence of a successor to the dissolved corporation to carry out its contractual obligations, Levenstein brought suit against Sapiro. We recognized that there could be instances "where the nature of the relationship between the individual and his alter ego, his corporation and their activity is so completely personalized that the ingredient of actual fraud is unnecessary in order for the individual to be held liable for a contractual obligation made in the name of his corporation." Levenstein, 279 So.2d at 860. Unlike the corporation in Levenstein, both Dania and Carrousel existed at the time of trial and there is no suggestion that either was not a solvent corporation capable of meeting its obligations. Levenstein presented a different issue and problem from the issue presented here. The problem in Levenstein was the inequity of permitting a corporation to avoid contractual obligations by dissolving itself. In Levenstein we fashioned an equitable remedy appropriate to the facts and circumstances of a completely personalized corporation with one asset received from its sole shareholder which was dissolved after selling that asset. Levenstein became an anachronism with the enactment of the Florida General Corporation Act by chapter 75-250, Laws of Florida. If the Levenstein cause of action arose today, there would be no need to devise an equitable remedy or to pierce the corporate veil. Section 607.297, Florida Statutes (1983) provides a legal remedy "against such corporation or its directors, officers, or shareholders for any right or claim existing, or any liability incurred prior to such dissolution if action ... is commenced within 3 years after the date of such dissolution."
In contrast to the above cases which offer little support for the district court decision, there is a line of cases which squarely faces the question of piercing the corporate veil and holds that doing so required a showing of improper conduct. In Riley v. Fatt, 42 So.2d 769, 773 (Fla. 1950), we reversed a trial court judgment which allowed a creditor to pierce the corporate veil because:
The rule is that the corporate veil will not be pierced, either at law or in equity, unless it be shown that the corporation was organized or used to mislead creditors or to perpetrate a fraud upon *1120 them... . In the absence of pleading and proof that the corporation was organized for an illegal purpose or that its members fraudulently used the corporation as a means of evading liability with respect to a transaction that was, in truth, personal and not corporate, Fatt cannot be heard to question the corporate existence but must confide his efforts to the remedies provided by law for satisfying his judgment from the assets of the corporation, if any can be found. (Citations omitted, emphasis in original.)
In Gross v. Cohen, 80 So.2d 360 (Fla. 1955), we affirmed a trial court judgment refusing to pierce the corporate veil because the evidence did not show that the corporation was actually organized or used to mislead creditors or to perpetrate a fraud upon them.
In Advertects, Inc. v. Sawyer Industries, Inc., 84 So.2d 21 (Fla. 1955), we rejected the proposition that a rule could be issued against individual stockholders to show cause why they should not be personally responsible for corporate debts absent a preliminary showing
that the corporation is in actuality the alter ego of the stockholders and that it was organized or after organization was employed by the stockholders for fraudulent or misleading purposes, or in some fashion that the corporate property was converted or the corporate assets depleted for the personal benefit of the individual stockholders, or that the corporate structure was not bona fidely established or, in general, that property belonging to the corporation can be traced into the hands of the stockholders.
It isn't sufficient merely to show that the corporation exists and that there are a limited number of stockholders doing business in good faith through the corporate entity. From a procedural standpoint we hold that a showing similar to that suggested in summary above be made before the rule nisi is issued and directed against the individual stockholders. If this requirement were not made then every judgment against a corporation could be exploited as a vehicle for harassing the stockholders and entering upon fishing expeditions into their personal business and assets.
Id. at 24. In so holding we stated the controlling law on piercing the corporate veil and delineated why it was so:
The corporate veil will not be penetrated either at law or in equity unless it is shown that the corporation was organized or employed to mislead creditors or to work a fraud upon them.
Every corporation is organized as a business organization to create a legal entity that can do business in its own right and on its own credit as distinguished from the credit and assets of its individual stockholders. The mere fact that one or two individuals own and control the stock structure of a corporation does not lead inevitably to the conclusion that the corporate entity is a fraud or that it is necessarily the alter ego of its stockholders to the extent that the debts of the corporation should be imposed upon them personally. If this were the rule, it would completely destroy the corporate entity as a method of doing business and it would ignore the historical justification for the corporate enterprise system.
Id. at 23-24.
In Roberts' Fish Farm v. Spencer, 153 So.2d 718 (Fla. 1963), we held that the Florida Industrial Commission did not have jurisdiction to pierce the corporate veil. Although Roberts' Fish Farm presented different factual and legal issues than those presented here, our remarks on the purpose of corporate entities and the rationale for the law controlling the piercing of the corporate veil are apropos:
The corporate entity is an accepted, well used and highly regarded form of organization in the economic life of our state and nation. As we said in State ex rel. Continental Distilling Sales Co. v. Vocelle, 1946, 158 Fla. 100, 27 So.2d 728, "Their purpose is generally to limit liability and serve a business convenience." Those who utilize the laws of this state *1121 in order to do business in the corporate form have every right to rely on the rules of law which protect them against personal liability unless it be shown that the corporation is formed or used for some illegal, fraudulent or other unjust purpose which justifies piercing of the corporate veil. This is the reason for the rule, stated in all Florida cases, that the courts are reluctant to pierce the corporate veil and will do so only in a court of competent jurisdiction, after notice to and full opportunity to be heard by all parties, and upon showing of cause which necessitates the corporate entity being disregarded in order to prevent some injustice.
Id. at 721.
We conclude that the district court decision directly and expressly conflicts with decisions of this Court which hold that the corporate veil may not be pierced absent a showing of improper conduct. We decline to recede from these cases. The district court holding is quashed on this point.
At the close of the evidence, the trial court directed a verdict on the issue of Dania's liability, finding that Dania and Carrousel were operating a close-knit operation and held themselves out to the public as a single enterprise. The district court agreed, holding that when two corporations hold themselves out to the public as a single enterprise and that enterprise involves an inherent risk to members of the public, both corporations incur tort liability for the torts of the enterprise. Stuyvesant Corp. v. Stahl, 62 So.2d 18 (Fla. 1952); Orlando Executive Park, Inc. v. P.D.R., 402 So.2d 442 (Fla. 5th DCA 1981).[2]
In its holding, the district court did not address what we consider to be the controlling question. Under the evidentiary facts presented to the trial court, was the court correct in taking the issue from the jury and directing a verdict against Dania? We think not.
In granting a motion for directed verdict, the Court must determine that there is no evidence to support a jury finding for the party against whom the verdict is sought. Cadore v. Karp, 91 So.2d 806 (Fla. 1957). It does not lie within the province of the Court to weigh evidence or determine questions of credibility and, where there is the possibility of different conclusions or inferences from the evidence the Court should submit the issue to the jury. Bruce Construction Corp. v. The State Exchange Bank, 102 So.2d 288 (Fla. 1958). See also 25 F.L.P., Verdict, § 9.
Parsons v. Reyes, 238 So.2d 561, 563 (Fla. 1970) (emphasis in original). The record here indicates there was evidence which, if accepted by the jury, tended to show that Dania and Carrousel operated independently of each other. Carrousel had offices at the fronton and a written concession agreement with Dania. Carrousel exercised control of valet-parking services and food, beverage, and program sales and paid Dania for use of the premises and for the concessions. Carrousel had separate bank accounts and profit and loss statements. Carrousel dealt with independent suppliers. Carrousel had about 120 employees which it independently hired, fired, and controlled, including the parking attendant involved here. Respondent Sykes, and other patrons, received parking tickets which identified Carrousel as the parking operator. We express no opinion on what the preponderance of the evidence shows; that question is properly for the jury to determine. We have no doubt, however, that there was a jury question posed and that it was error to direct a verdict on this issue. Petitioners also assert that there is no record evidence supporting the district court's findings that Dania and Carrousel advertised themselves as Dania Jai-Alai and that the public had no reason to suspect there was more than one entity involved. Surprisingly, respondent did not answer with citations to the record to support the district court finding. However, it is not necessary to *1122 resolve this question, as we are not reviewing the issue as to the preponderance of the evidence.
The district court cited Stuyvesant and Orlando Executive Park as supporting its decision. Neither case involved a directed verdict. In Stuyvesant, a hotel and a parking concession were involved but, unlike here, the parking was free, the parking tickets were issued in the name of the hotel, and the parking concessionaire employees wore uniforms with the name of the hotel on them. In Orlando Executive Park, the motel was one of a national chain, Howard Johnson, indistinguishable from other motels in the same chain, and presented to the public under the name of the national chain. The fact that the individual motel was owned and operated under a licensing agreement with the national chain did not preclude a jury verdict against the national chain on an agency theory. Again, we emphasize that neither case involved a directed verdict and, thus, was not subject to the stringent rules of review governing directed verdicts. We quash the district court's holding on this point.
Petitioners also raise various issues concerning asserted improper trial court rulings and improper argument to the jury which petitioners contend denied them a fair trial. The district court found them to be meritless without further comment. In her brief, respondent concluded that the issues were meritless and declined to respond to them before this Court. This could prove hazardous as we said in Bould v. Touchette, 349 So.2d 1181, 1183 (Fla. 1977), "[i]f conflict appears, and this Court acquires jurisdiction, we then proceed to consider the entire cause on the merits."
Because these issues are mooted by our holdings on other issues, they are not likely to recur on retrial, and because there is well-settled law controlling these issues, we express no opinion on the merits. We caution respondent, and others who might appear before this Court, that answer briefs should be prepared in the same manner as the initial brief so that the issues before the Court are joined. Further, that the answer brief should omit the statement of the case and of the facts unless there are areas of disagreement, which should be clearly specified. Fla.R.App.P. 9.210.
Respondent urges that the district court erred in reversing the trial court's directed verdict on comparative negligence. We agree with the district court that the issue of negligence on respondent's part was a jury question and that it was error to direct a verdict on this issue.
Quashed in part, approved in part, and remanded for further proceedings consistent with this opinion.
It is so ordered.
ALDERMAN, C.J., and BOYD, OVERTON, McDONALD and EHRLICH, JJ., concur.
NOTES
[1] Jefferson County Burial Soc'y v. Cotton, 222 Ala. 578, 133 So. 256 (1930)
[2] We have since approved in Orlando Executive Park, Inc. v. Robbins, 433 So.2d 491 (Fla. 1983).