550 So.2d 49 (1989)
SOUTHEAST CAPITAL INVESTMENT CORPORATION, a Florida Corporation and Southeast Capital Corporation, a Florida Corporation, Appellants,
v.
ALBEMARLE HOTEL, INC., a Florida Corporation, Appellee.
Nos. 88-03179, 88-03189.
District Court of Appeal of Florida, Second District.
August 23, 1989.
*50 Martin Errol Rice and Robert Harold Willis, Jr. of Skelton, Willis, Rice & Bennett, St. Petersburg, for appellants.
John T. Allen, Jr. and Christopher P. Jayson of John T. Allen, Jr., P.A., St. Petersburg, for appellee.
CAMPBELL, Chief Judge.
Appellants, Southeast Capital Investment Corporation (Southeast Investment) and Southeast Capital Corporation (Southeast Capital), challenge a final judgment that required Southeast Investment to specifically perform on a contract to purchase the Albemarle Hotel from appellee, Albemarle Hotel, Inc. Appellant, Southeast Investment, is a wholly owned subsidiary of appellant, Southeast Capital. The final judgment pierced the corporate veil of Southeast Investment, finding that Southeast Capital was the alter ego of Southeast Investment and holding Southeast Capital liable for Southeast Investment's Albemarle Hotel contract obligations. We affirm in part and reverse in part.
The first issue presented to the trial court and now to us for resolution is whether the remedy of specific performance was available to the appellee seller under the terms of the contract. The trial judge held that specific performance was available to appellee and we agree.
The contract that was ultimately finalized provided that Southeast Investment would purchase the hotel for $2,100,000 cash in full at closing. Upon accepting the contract, appellant paid a $21,000 deposit on the contract price. Closing was scheduled for December 23, 1987. The basic contract document which appellant Southeast Investment prepared and proposed to appellee was a Standard Florida Association of Realtors/Florida Bar form contract. It was ultimately modified by a separate typed addenda and amendment to the contract which was referred to in the body of the form contract and which was initialed upon acceptance by all parties in regard to each particular addition or change to the contract. The body of the form contract contains on the second page a paragraph "U" pertaining to defaults and remedies therefor.
Paragraph "U" provided as follows:

*51 U. Default: If Buyer fails to perform this Contract within the time specified, the deposit(s) paid by the Buyer aforesaid may be retained by or for the account of Seller as liquidated damages, consideration for the execution of this Contract and in full settlement of any claims; whereupon all parties shall be relieved of all obligations under the Contract; or Seller, at his option, may proceed at law or in equity to enforce his legal rights under this Contract. If, for any reason other than failure of Seller to render his title marketable after dilligent effort, Seller fails, neglects or refuses to perform this Contract, the Buyer may seek specific performance or elect to receive the return of his deposit(s) without thereby waiving any action for damages resulting from Seller's breach.
On the form contract there appears to be a rather faint and indistinct line that begins under the beginning words and proceeds faintly upward through the end of the phrase of paragraph "U" that states "or Seller, at his option, may proceed at law or in equity to enforce his legal rights under this Contract." That line, whatever it was or may have intended to have been, was not initialed or acknowledged in any way by any of the parties, in direct contrast with other changes or additions to the contract. Testimony on behalf of Southeast Investment seems to indicate it was trying to unilaterally eliminate the seller's right to specific performance. The language of paragraph "U" pertaining to the buyer's right to specific performance was not affected. The testimony of the witness for the seller indicated that the "indeterminate" line in paragraph "U" may have been a "glitch" made by the copying machine in copying the contract.
Paragraph "Y" of the contract document provides that "[n]o modification or change in this Contract shall be valid or binding upon the parties unless in writing, executed by the parties to be bound thereby." Under the circumstances revealed to the trial judge by the testimony of the witnesses and the documentary evidence presented, the trial judge properly found that specific performance remained an alternative remedy available under the terms of the contract to both the buyer and the seller. We agree that the evidence supports that finding.
We next must consider whether the trial court incorrectly disregarded Southeast Investment as a corporate entity and held Southeast Capital liable for its subsidiary's contractual obligation. In that regard, the trial judge, in the final judgment, found as follows:
The Defendant, Southeast Capital Investment Corporation, is a wholly-owned subsidiary of Southeast Capital Corporation, both of which are are [sic] controlled by Ian Irwin as President. The Court finds that the subsidiary is an alter-ego of its parent corporation and that the requisite unjust purpose or conduct under Dania Jai-Alai, Inc. v. Sykes, 450 So.2d 1114, 1121 (Fla. 1984) has been shown. The subsidiary entered into a real estate contract requiring the payment of $2,100,000.00 in cash at closing without the present ability or expectation of the ability to perform. This was done for the benefit of its parent corporation at the expense and detriment of the Plaintiff.
The trial judge was correct in applying the standard set forth in Dania Jai-Alai, Inc. v. Sykes, 450 So.2d 1114 (Fla. 1984), and our study of the record convinces us that there was sufficient evidence before the trial judge that requires us to affirm his findings.
Next, appellants argue that the trial judge erred in admitting into evidence testimony concerning statements made by the parties during two meetings requested by appellants after the execution of the contract and prior to closing. Those meetings occurred when appellants realized that they had not paid attention to the terms of the contract that very clearly require cash at closing. Appellants had apparently paid little attention to those provisions even though those terms are clearly and expressly stated in the contract addendum and initialed in each particular by appellants' executing officers. Appellants seek to exclude the testimony of their subsequent *52 conversations with appellee's representatives on the basis that section 90.408, Florida Statutes (1987), prohibits admission of evidence of offers to compromise a claim disputed as to validity or amount and any relevant conduct or statements made in any such negotiations. Appellee argued and the trial court correctly ruled that the statements were admissible because the meetings between the parties were not settlement conferences.
The essence of the conversations was that the president of both appellant corporations sought to change the terms of the contract to avoid the cash at closing requirement. There was testimony that appellants' president stated that if appellee would not consent to such a change, he would seek to find a way to break the contract or would put Southeast Investment, a "shell corporation," into bankruptcy to avoid having to pay the contract price at closing. We agree with the trial judge that the statements were properly admitted into evidence. Repudiating a contract or attempting to induce the other party to agree to substantially new terms does not constitute an offer to compromise a claim as is contemplated by section 90.408.
The final issue presented to us concerns appellee's entitlement to prejudgment and postjudgment interest on a judgment directing specific performance. We agree that when the purpose of specific performance is to require payment of a specific sum clearly due under the terms of a contract at a clearly specified time, both prejudgment interest from the time the sum was due and postjudgment interest from the date of judgment is proper. However, we do find that prejudgment interest should have commenced on December 23, 1987, the date of closing established in the contract when payment of the purchase price should have been made. The trial court erred in commencing prejudgment interest on November 16, 1987, the date on which appellants repudiated the contract. See Peter Marich and Associates, Inc. v. Powell, 365 So.2d 754 (Fla. 2d DCA 1978).
We, therefore, affirm the final judgment in all particulars except for the date of commencement of the accumulation of prejudgment interest. We reverse only in that regard and direct that such prejudgment interest shall commence on December 23, 1987.
Affirmed in part and reversed in part.
RYDER and SCHOONOVER, JJ., concur.