**In re HILLSBOROUGH HOLDINGS CORPORATION, et al., Debtors,**

**HILLSBOROUGH HOLDINGS CORPORATION, et al., Plaintiffs,**

v.

**The CELOTEX CORPORATION, et al., Defendants.**

**Bankruptcy Nos. 89–9715– 8P1 to 89–9746–8P1. Adv. Nos. 90–0003, 90–0004.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Feb. 3, 1993.

Don Stichter, Stichter, Riedel, Blain & Prosser, Tampa, FL, Michael Crames, Kaye, Scholer, Fierman, Hays & Handler, New York City, for debtors/plaintiffs.

Marsha Griffin Rydberg, Tampa, FL, Elihu Inselbuch, New York City, for defendants.

## ORDER ON PRE–TRIAL CONFERENCE DETERMINING THE ISSUES TO BE TRIED AND TO SET LIMITS OF ADDITIONAL DISCOVERY

ALEXANDER L. PASKAY, Chief Judge.

THESE ARE non-consolidated Chapter 11 cases involving Hillsborough Holdings Corporation (now known as Walter Industries) and its 32 wholly-owned subsidiaries (Debtors). This adversary proceeding was instituted by the Debtors in order to obtain, *inter alia*, a declaratory judgment that the corporate veil between The Celotex Corporation (Celotex) and Jim Walter Corporation (JWC) could not be pierced.

The original Complaint for Declaratory Judgment was filed by the Debtors on January 2, 1990. Extensive litigation began immediately beginning with Motions to Abstain and a Motion to Withdraw Reference filed by the real antagonists in this adversary proceeding, the personal injury claimants (Asbestos Claimants). This Court denied the Motion to Abstain on April 13, 1990. The Motion to Withdraw Reference was transmitted to the District Court for decision, and subsequently, the District Court denied the Motion to Withdraw Reference. In addition, this Court entered an Order Striking the Defendant's demand for jury trial, an Order which was also affirmed by the District Court. The Asbestos Claimants promptly filed a Motion for Reconsideration of the District Court's Order Denying Motion to Withdraw Reference and confirming this Court's Order Striking the Demand for Trial by Jury. This Motion is under advisement and is still pending before the District Court.

On May 25, 1990, the Debtors filed their first Amended Complaint. On June 5, 1990, at the conclusion of a properly-scheduled status conference, this Court entered an Order which directed the Defendants to file their Answers to the Amended Complaint by June 18, 1990; to complete discovery by July 6, 1990; and to schedule a hearing to consider a Motion for Summary Judgment by any party involved, if one was filed no later than July 23, 1990. Thereafter, the parties engaged in extensive discovery which, of course, spawned

innumerable discovery disputes and even some appeals.

In the interim, this matter became further complicated when Celotex, one of the Defendants, filed its own Petition for Relief under Chapter 11 of the Bankruptcy Code on October 12, 1990. This, of course, by virtue of operation of the automatic stay, stopped all further proceedings against Celotex. On October 24, 1990, Celotex filed a Notice of Automatic Stay. On June 27, 1991, after the conclusion of a rescheduled status conference, this Court entered a new Order rescheduling the timetable for responding to discovery requests. This Court also scheduled a hearing on all pending motions including a motion for summary judgment, if filed, for August 20, 1991. On December 11, 1991, this Court entered another Order rescheduling the status conference. In light of the Celotex Chapter 11 case, the Debtors were directed to seek relief from the automatic stay if they desired to further pursue this adversary proceeding. In due course, the Debtors filed their Motion for Relief from the Automatic Stay. On June 12, 1991, Judge Thomas E. Baynes, Jr. granted the Motion in part, permitting the Debtors to present and argue their Motion for Summary Judgment. The Motion was promptly scheduled for hearing, and on August 25, 1992, after extensive oral argument and submission of briefs, this Court entered an Order denying the Debtors' Motion for Summary Judgment. In its Order, this Court concluded that because genuine issues of material fact existed, resolution of this controversy by way of Summary Judgment was improper. More importantly, the Order also specified the following issues which remained to be tried:

(1) the precise manner of the operation of the cash management system,

(2) the record-keeping account activities by JWC and its subsidiaries, including Celotex, and

(3) most importantly, the extent of the control exercised by JWC over the affairs of Celotex, especially the extent of JWC's involvement in the decision-making process of the divestiture program at Celotex . . .

On September 3, 1992, the Debtors filed a Motion to Reopen the Record in order to present additional evidence pursuant to Fed.R.Civ.Pro. 43(e), as adopted by F.R.B.P. 9017. In due course, the Motion was heard, and on October 8, 1992, this Court entered an Order denying the Motion. The Order also provided that the following two additional issues remained to be considered at the trial:

(1) whether or not the disposition of assets of Celotex was based on a valid economic basis and fully justified by the prevailing market conditions, and,

(2) whether or not the utilization of the proceeds in fact was not repayment of valid obligations and resulted in rendering Celotex insolvent and without sufficient assets to respond to the claims of the Asbestos Claimants.

In light of the fact that the automatic stay was modified for the limited purpose of permitting consideration by this Court of the Debtors' Motion for Summary Judgment, the Debtors renewed their Motion before Judge Baynes seeking complete relief from the automatic stay in order to proceed forthwith to trial on the remaining five issues outlined above. On January 13, 1992, Judge Baynes granted the Motion and authorized the Debtors to proceed to complete this litigation. Shortly thereafter, this Court again scheduled a pre-trial conference in order to determine: (1) the issues which are to be tried; (2) what additional discovery, if any, should be permitted; and (3) the limits and parameters of the additional discovery, if any.

According to the Debtors, inasmuch as discovery was already completed in connection with their Motion for Summary Judgment, no additional discovery should be permitted. In opposition, the Asbestos Claimants contend that the five issues described above were merely illustrative and were not determined by the Court to be an exhaustive list. Thus, the Asbestos Claimants contend they should be permitted to conduct additional discovery concerning the facts supporting the various theories on which they intend to establish their right to

pierce the corporate veil of Celotex. In this connection, counsel for the Asbestos Claimants point out that the discovery conducted for the purposes of defending against the Debtors' Motion for Summary Judgment was limited to show that genuine issues of material fact remained to be decided by this Court, and therefore, the Motion for Summary Judgment could not be granted. For this reason, they now urge this Court to permit additional discovery relating to the unresolved five issues previously identified, as well as to any facts germane to the four additional legal theories which they set forth in their Pre–Trial Conference Statement as follows:

(1) JWC is liable for personal injuries inflicted by Celotex's asbestos-related activities because Celotex was the mere instrument, agent, and servant of JWC in respect of those activities.

(2) JWC is liable for such personal injuries because JWC directed and controlled the acquisition of The Panacon Corporation (Panacon) at a time when JWC and its management knew or reasonably should have known that Panacon had caused, and was continuing to cause, thousands of persons to suffer disabling and fatal disease as a result of exposure to asbestos and asbestos-containing products.

(3) JWC is liable for such personal injuries because after lodging Panacon in Celotex as a matter of corporate form, JWC permitted Celotex to operate with a capital that was disproportionately small in relation to the massive asbestos liabilities that were arising from asbestos-related activities carried out in the guise of Celotex.

(4) JWC is liable for such personal injuries because, in all the facts and circumstances, any claims that JWC had on the assets of Celotex, whether in the nature of debt or equity, were equitably subordinated to the claims of asbestos victims.

■ Before considering the four different legal theories advanced by the Asbestos Claimants, it is important to point out the basic principles which govern piercing the corporate veil in the State of Florida. The corporate veil may be pierced only when it is apparent that the corporation was a mere device, sham, or alter ego of another corporation or individual who owns a controlling share of the corporation in question. *Dania Jai Alai Palace v. Sykes,* 450 So.2d 1114 (Fla.1984). Furthermore, the corporate veil may be pierced when the corporation was used to evade some statute or to accomplish some fraud or illegal purpose. *Id.* Moreover, fraud will be presumed when there is self dealing or when the legal effect of a transaction is to delay or hinder creditors. *Id.; Markow v. Alcock,* 356 F.2d 194 (5th Cir.1966); *In re F & C Services,* 44 B.R. 863 (Bankr.S.D.Fla. 1984).

■ This Court is satisfied that, after careful analysis of the foregoing, the first theory advanced by the Asbestos Claimants is nothing more than a restatement of the issues this Court has already identified as proper to be tried. The second theory advanced, however, presents a problem, especially in light of the statement made by counsel for the Asbestos Claimants at the pre-trial conference when he indicated that he intends to prove that the acquisition of Panacon by Celotex and the merger of Panacon into Celotex was merely a sham and the merger was, in fact, a merger into JWC, and for this reason JWC is liable to the personal injury claims asserted by the Asbestos Claimants. This statement does not match the theory asserted in the Asbestos Claimants' Pre–Trial Conference Statement, which stated that JWC is liable for the personal injuries of the Asbestos Claimants because JWC "directed the acquisition of Panacon at a time when JWC knew that Panacon had caused ... and was continuing to cause, thousands of persons to suffer disabling and fatal diseases as a result of exposure to asbestos and asbestos-containing products." This Court is not aware of any legal authority which would permit piercing the corporate veil under this theory.

■ The next theory advanced is based on the proposition urged by the Asbestos Claimants that Celotex was undercapitalized. Assuming, without admitting, that

this is a fact, this Court is satisfied that the undercapitalization of Celotex, *vel non*, is insufficient as a matter of law to form the basis for piercing the corporate veil of Celotex. Extensive research fails to find any authority to support the argument that a parent has a legal duty to assure continuously the adequate capitalization of a wholly-owned subsidiary when the subsidiary was already an existing corporate entity when acquired by the parent, and was not the creation of the parent.

Lastly, the Asbestos Claimants' assert a final theory on which, according to them, additional discovery should be permitted based upon the equitable consideration that all claims against the Debtors shall be subordinated to the claims of the Asbestos Claimants. This Court is satisfied that this theory is without basis for the simple reason that before subordination comes into play, a concept clearly recognized by § 510 of the Bankruptcy Code, there must be an allowed claim, which is still an issue to be resolved in this litigation. Thus, to consider subordination on equitable grounds at this point is clearly premature.

In the last analysis, this Court is satisfied that discovery shall be limited to the following issues already outlined by this Court: (1) whether or not during the period relevant, JWC exercised such pervasive dominant control over the affairs of Celotex which, in fact, made Celotex nothing more than a sham or an alter ego of JWC; (2) whether or not the inter-company transactions between Celotex and JWC disregarded all hallmarks of the separateness of the legal and equitable existence of a subsidiary from its parent, that is, the matters already outlined concerning the operation of the cash management system, and the record-keeping activities of both entities concerning inter-company transactions; (3) to what extent JWC was involved in the decision-making process concerning the sale of assets of Celotex; (4) whether or not the disposition of assets of Celotex was based on a valid economic basis and was fully justified by the prevailing market conditions; and (5) whether or not the utilization of the proceeds in fact was not repayment of valid obligations and resulted in rendering Celotex insolvent and without sufficient assets to respond to the claims of the Asbestos Claimants. Of the additional theories advanced by the Asbestos Claimants, discovery shall be limited to facts relevant to whether or not Celotex was, in fact, an agent and functioned as an agent of its parent, JWC.

It should be pointed out, however, that what is not involved in this case is the insolvency, *vel non*, of Celotex prior to or at the time of its acquisition by JWC. In addition, all discovery shall be limited to facts relevant to the relationship between Celotex and JWC from the time it was acquired by JWC and up to, and including, the time JWC relinquished its interest in Celotex. Discovery is not permitted concerning anything which directly and/or indirectly relates to the second phase of this controversy, that is, whether or not the leveraged buy out (LBO) was or was not fraudulent. Based on the foregoing, it is

ORDERED, ADJUDGED AND DECREED that additional discovery is permitted. This discovery shall be limited to the issues outlined above. It is further

ORDERED, ADJUDGED AND DECREED that a schedule setting discovery deadlines shall be entered by separate Order.

DONE AND ORDERED.