FRANK, Judge.
On June 5, 1985 the appellant, “Florida Trading,” the investor, and the appellees, the “Traders,” executed an agreement entitled “Joint Adventure Agreement” (JAA) designed to achieve a series of transactions involving the purchase of rough, uncut diamonds in Africa and their sale for at least a threefold profit in Amsterdam. The JAA contemplated the completion of four distinct transactions. Each transaction was divided into separate purchases and sales of diamonds. Florida Trading’s obligations were to supply funds, transportation and expenses and to provide an agent to handle custody of the diamonds and cash. The Traders were to use their “superior skill, expertise, experience, knowledge, and general wherewithal! (sic) concerning the trading of diamonds” to accomplish the commercial goals.
Florida Trading’s agent went to Africa with the $35,000 needed for the first phase purchase. The diamonds were bought and transported to Amsterdam where they were evaluated by the prospective buyer. The diamonds were appraised at a much lower value than had been expected, and were not sold. Florida Trading’s agent returned to the United States with the diamonds and pursuant to the agreement advised the Traders that they were in default. Thereafter, the parties entered into an agreement entitled “Mutual Modification and Release Agreement.” That agreement provided that the Traders would execute a promissory note in favor of Florida Trading in the amount of $95,727.50 payable in ninety days. Upon execution of the note, the Traders were given possession of the diamonds for the purpose of having them cut into a vendable state. The Traders, however, did not sell the diamonds with the result that a helicopter collateralizing the modification agreement was sold and the amount'of the note was reduced by $30,-611.53. The Traders failed to make any payments pursuant to the modification agreement, and Florida Trading filed suit to collect the balance of the note.
A non-jury trial was conducted and final judgment was entered in favor of the Traders. The trial court concluded that the JAA was not a true joint venture agreement because it failed to include a provision for the sharing of losses. The trial court also found that there was a failure of consideration underlying the modification agreement, and that it and a contemporaneous note were not intended to release the parties. Finally, the trial court determined that the difference between the face amount of the note, $95,727.50, and the $45,000 Florida Trading actually expended constituted interest in excess of the lawful rate in violation of section 687.071(7), Florida Statutes (1985).
Florida Trading challenges the trial court’s findings that the note was unenforceable for failure of consideration and violative of the usury statute. It also at *602 tacks the trial court’s view that a joint venture did not exist. We reverse.
A joint venture is “a special combination of two or more persons, who, in some specific venture, seek a profit jointly without the existence between them of any actual partnership, corporation, or other business entity.” Florida Tomato Packers, Inc. v. Wilson, 296 So.2d 536, 539 (Fla. 3d DCA 1974), cert. denied, 327 So.2d 32 (Fla.1976). Denominating the initial document as a “Joint Adventure Agreement” has some bearing in assessing its nature. Goodman v. Olsen, 305 So.2d 753 (Fla. 1974), cert. denied, 423 U.S. 839, 96 S.Ct. 68, 46 L.Ed.2d 58 (1975). The ultimate determination, however, turns upon the intent of the parties. The record reveals that Florida Trading and the Traders envisioned a series of phasic transactions with the start-up capital supplied by Florida Trading. It is readily apparent from the JAA that after the first phase was completed the proceeds would be used to fund the succeeding phase and this pattern would be followed through to the end of the four stages. Ultimately, Florida Trading and the Traders would participate in profits. We cannot agree, as the Traders contend, that Florida Trading did nothing more than loan the Traders money. It is manifest from the record that Florida Trading was functionally involved in each aspect of the scheme. It sent an agent to Africa to deliver the funds and the agent went to Amsterdam with the diamonds. When the diamonds were appraised at a much lower than anticipated value, the agent returned to the United States with the diamonds. The evidence leaves no room to doubt that Florida Trading was wholly integrated into each step of the venture.
The fact that the JAA does not expressly provide for the sharing of losses is not fatal to the relationship of Florida Trading and the Traders as joint venturers. The mutuality of detriment, actual and potential, present in this matter fits well within settled law:
In Florida a duty to share in losses actually and impliedly exists as a matter of law in a situation where one party supplies the labor, experience and skill, and the other the necessary capital since in the event of a loss, the party supplying the knowhow would have exercised his skill in vain and the party supplying the capital investment would have suffered a diminishment thereof.
Tomato Packers at 539, citing, Russell v. Thielen, 82 So.2d 143 (Fla.1955). Florida Trading provided the funds and the Traders supplied their expertise.
Turning now to the question of consideration essential to the enforceability of the modification agreement, we are persuaded that the parties were “desirous of resolving their differences and reducing the claim of Florida Trading against the Traders arising out of the Joint Adventure Agreement.” Roy Benton, one of the Traders, testified that it was his understanding that the JAA was put to bed the day the promissory note was signed. Thus, a mutual release was executed. Contrary to the trial court's belief, we find that the parties intended the modification agreement to relieve each of them from obligations arising under the JAA. The bilateral effort to terminate any dispute stemming from the JAA was subtended by adequate consideration. In fulfillment of the modification agreement, Florida Trading relinquished possession of the uncut diamonds to the Traders to permit them to have the stones cut and sold. The record indicates that the diamonds may have been worth as much as $120,000, an amount in excess of the face amount of the note.
Finally, from the record before us we are unable to agree with the trial court’s notion that Florida Trading’s advancement of money was intended as a loan. Hence, the amount in excess of the $45,000 provided by Florida Trading cannot constitute usurious interest in violation of section 687.071(7), Florida Statutes (1987). It is the substance of a transaction, rather than its form, that must be scrutinized in ascertaining whether a transaction, not appearing in the form of a loan, is in fact a *603 usurious loan. Growth Leasing, Ltd. v. Gulfview Advertiser, Inc., 448 So.2d 1224 (Fla. 2d DCA 1984). For a transaction to be labeled usurious there must be a loan, either expressly or impliedly created, an understanding that the money is to be repaid at a rate greater than allowed by law, and a corrupt intent on the part of the lender to extract more than the legal rate of interest. Rebman v. Flagship First Nat. Bank of Highlands County, 472 So.2d 1360 (Fla. 2d DCA 1985). We find none of the foregoing elements in this proceeding.
Accordingly, we reverse the final judgment and remand this matter for further proceedings consistent with this opinion.
LEHAN, A.C.J., and HALL, J., concur.