LOGUE, J.
Aristech Acrylics, LLC and Christopher Hyatt appeal a final judgment entered in favor of Lars, LLC for $43,333. The primary issue on appeal is whether the trial court misconstrued Aristech’s obligations under a Distributorship Agreement between Aristech and Lars, in finding that, after Aristech terminated the agreement, Aristech breached its contractual duty to repurchase inventory held by Lars. Because we conclude the conditions required for the repurchase of inventory under the contract were not satisfied, we reverse on that issue. We affirm on all other issues.
FACTS AND PROCEDURAL HISTORY
On August 27, 2007, Aristech and non-party Tech Products, Inc. (“TPI”) entered into the agreement, under which TPI was appointed a distributor of certain Aristech products in Florida. The agreement provides both parties with a right to terminate and requires Aristech to repurchase inventory sold to the distributor under certain circumstances. It reads as follows:
17. GENERAL TERMINATION
(a) Either party may terminate this Agreement on sixty (60) days written notice to the other party.
[[Image here]]
(c) In the event that [Aristech] terminates this Agreement pursuant to paragraph 17(a) and the Distributor continues to fulfill all of the general obligations of the Distributor stated in paragraph 2 of this Agreement and Distributor’s account balance with Ar-istech is within the standard payment terms outlined in paragraph 6 of this Agreement, [Aristech] shall offer to purchase Distributor’s Product Inventory (hereinafter “Inventory”) at [Ar-istech’s] original invoice price under the following conditions:
(i) Inventory is in [Aristeeh’s] original packaging and has been unopened.
(ii) Inventory was purchased within 90 days prior to the termination notice.
(iii) Total value of the Inventory repurchase cannot exceed $125,000....
(iv) Distributor agrees to waive the 60 day period and give up their [Aris-tech] authorized distributorship status immediately.
Paragraph 6(a), regarding payment, provides:
(a) Standard Payment Terms: Distributor shall pay [Aristech] for all Products as invoiced within standard payment terms of Net Thirty (30) Days from date of invoice....
In January 2008, Lars purchased certain assets of TPI, and assumed the obligations of TPI under the agreement. Upon purchase of the TPI assets, Lars took possession of certain inventory of TPI on a consignment basis. On May 19, 2008, Lars placed an order for more inventory in the amount of $20,139, which became due on June 18, 2008, and remained unpaid. Lars placed an additional order for inventory in the amount of $30,961, on May 27, 2008, which became due on June 26, 2008, and similarly remained unpaid.
On May 30, 2008, Aristech sent Lars a letter terminating the agreement, effective August 1, 2008, after the expiration of the sixty-day termination period established in the agreement. After receiving the termination letter, on June 13, 2008, Lars purchased an additional $60,710 in inventory from Aristech. This invoice became owing on July 13, 2008, and remained unpaid.
*544 In August 2008, Lars filed a complaint against Aristech stemming from the agreement and its termination. Aristech counterclaimed for the $118,810 in unpaid invoices. Lars eventually amended its complaint to allege that Aristech breached the agreement by failing to repurchase inventory from Lars. Following a bench trial, the trial court entered a final judgment, which made the following pertinent findings of fact:
10. The testimony in this case affirms that prior to Aristech’s termination of the Distribution Agreement, Lars continued to fulfill all the obligations as stated in paragraph 2 of the Agreement and its account balance was within the standard payment terms (not more than 30 days) as outlined in paragraph 6 of the Agreement after receipt of the termination notice.
11. According to the testimony of Paul Groll, [a managing member of Lars], at the time of the receipt of the termination notice Lars had Aristech inventory in original packaging and unopened, Aristech inventory purchased within 90 days prior to the termination and the total value of the Aristech inventory was at least $125,000.
12. Despite the “shall” language in the agreement between the parties, Ar-istech never offered to repurchase the [inventory] pursuant to paragraph 17(c) and Lars was never provided with the opportunity to waive the 60 day period.
13. At the time of the termination notice, Lars was indebted to Aristech for Invoice Number 252541 in the amount of $20,139, Invoice Number 252884 in the amount of $30,961 and Invoice Number 253724 in the amount of $60,710, for a total of $111,810. However, no invoice was more than 30 days overdue at the time of the termination and Lars, therefore, continued to “fulfill” the general obligations of the Distributor. Aristech did not.
The trial court awarded Lars $43,333 with respect to the breach of contract claim, and Aristech $118,810, on its counterclaim for unpaid invoices. Aristech appeals the judgment against it.
ANALYSIS
In interpreting a contract, “the words used by the parties must be given their plain and ordinary meaning.” Beans v. Chohonis, 740 So.2d 65, 67 (Fla. 3d DCA 1999). A contract “should be considered as a whole in determining the intention of the parties to the instrument.” Bucacci v. Boutin, 933 So.2d 580, 585 (Fla. 3d DCA 2006) (citation omitted). And “a court must construe a contract in a manner that accords with reason and probability; and avoid an absurd construction.” Kipp v. Kipp, 844 So.2d 691, 693 (Fla. 4th DCA 2003).
Here, the trial court entered final judgment in favor of Lars on the inventory repurchase issue, based on the court’s interpretation of the agreement. Under the trial court’s reading of section 17(c) of the agreement, Aristech was required to repurchase the inventory because, at the moment that it provided Lars with notice of the termination, on May 30, 2008:(1) Lars had Aristech inventory in original packaging and unopened; (2) Aristech inventory was purchased within ninety days prior to the termination; and (3) the total value of that Aristech inventory was at least $125,000. The trial court noted that although Lars was indebted to Aristech for $111,810 for the three outstanding invoices at the time of the termination notice, Lars was not past the thirty-day repayment period under paragraph 6 on any of the invoices at that time. The trial court concluded Aristech therefore was obligated to offer to repurchase the inventory and Lars had to have been given an opportunity to waive the sixty-day termination period.
*545 We conclude, however, that the contract language and the facts of this case dictate a contrary result. Section 17(c) of the agreement states that “[i]n the event that [Aristech] terminates this Agreement pursuant to paragraph 17(a) and the Distributor continues to fulfill all of the general obligations ... and Distributor’s account balance with Aristech is within the standard payment terms outlined in paragraph 6 of this Agreement, [Aristech] shall offer to purchase Distributor’s Product Inventory. ...” A proper reading of the contract language gives Aristech a reasonable period during which to execute any such duty and requires Lars to continue to fulfill all of its obligations, including remaining current on its payments.
Lars’ behavior following the notice of termination obviated any duty of Aristech to repurchase its inventory. In the weeks after the termination notice, Lars never attempted to invoke its right to resell the inventory back to Aristech. Instead, on June 13, 2008, less than two weeks after receiving notice of termination, Lars ordered additional inventory from Aristech. Lars could not have taken any clearer action evincing its intent that it did not wish to terminate the relationship with Aristech or waive the sixty-day period than by ordering additional inventory within the sixty-day termination notice period. And just five days later, on June 18, 2008, the first of the unpaid invoices become due, and was not paid. From that moment forward, Lars was not “within the standard payment terms,” and Aristech was under no obligation to repurchase the inventory. Lars subsequently acquired additional inventory of Aristech products from a third party. In fact, Lars successfully marketed and sold most of the inventory it had in stock at the time of the termination notice.[1]
CONCLUSION
Because, within a reasonable period of time after Aristech gave notice of termination, Lars defaulted on its payment obligations and acted in a manner indicating that it intended to continue marketing and selling Aristech products, Aristech was under no obligation under the agreement to repurchase the inventory. Accordingly, we reverse the portion of the judgment entered on Count IV of the complaint awarding Lars $43,333 with interest. We find no merit in the other issues raised on appeal by Aristech and Hyatt and affirm the trial court’s rulings on those issues. The remainder of the judgment remains intact.
Reversed in part and affirmed in part.

. As mentioned above, Lars inventory of Aris-tech products on the date of the termination letter was at least $125,000. By October 9, 2009, however, Lars had reduced its inventory of Aristech products to $11,000. Lars subsequently acquired additional inventory of Ar-istech products from third parties and sold most of that inventory as well. Lars could not, on the date of the trial, indicate how much, if any, of its inventory on-hand dated back before the termination letter.