# Third District Court of Appeal

## State of Florida

Opinion filed March 9, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-1836
Consolidated: 3D14-1512
Lower Tribunal No. 08-78374

_____

## David Houri, Skyrise Development Group, Inc., Financial Ocean Services, LLC, Realty Advise LLC and Central Florida Hotel Management, LLC,
Appellants,

vs.

## Mordechai Boaziz,
Appellee.


Appeals from the Circuit Court for Miami-Dade County, Herbert Stettin, Senior Judge.

Philip D. Parrish, for appellants.

Moskowitz, Mandell, Salim & Simowitz, Michael W. Moskowitz and Scott M. Zaslav, (Fort Lauderdale), for appellee.


Before WELLS, ROTHENBERG and EMAS, JJ.

WELLS, Judge.

Plaintiff, Mordechai Boaziz, sued Defendants, Yizhak Toledano and David Houri, as well as a number of entities owned either individually or jointly by these two,[1] seeking to recover millions of dollars in damages for their alleged breach of fiduciary duties, fraud, and civil conspiracy in connection with three real estate projects: The Residence Las Vegas condominium conversion; the Villaggio on the Lakes condominium conversion; and a transaction involving real property in Golden Isles (the Golden Isles project). Boaziz also claimed violations of Florida's Uniform Fraudulent Transfer Act with respect to The Residence Las Vegas and Villaggio projects.

The crux of Boaziz's action, as set out in his Third Amended Complaint, was that he, Toledano, and Houri were engaged in a joint venture and while he was distracted by the worsening health of his elderly parents, Toledano and Houri had deliberately set out to take advantage of the trust and confidence reposed in them, and had devised and carried out an elaborate scheme by which they fraudulently transferred and concealed millions of dollars generated in connection with these projects.

---

[1] Toledano owns and used FCI and 26 Realty in his real estate transactions. Houri owns Financial Ocean Services, LLC ("FOS") and controls Realty Advice, LLC. Toledano and Houri formed Skyrise Development Group, Inc. ("Skyrise") to engage in real estate transactions.

The following facts relating to the three projects at issue are relatively uncontested and straight forward.

### The Residence Las Vegas Condominium Conversion Project

This project commenced on November 1, 2004, when Boaziz, an experienced developer with dozens of condominium conversions under his belt, personally executed a $55,000,000 contract to purchase a 504 unit apartment complex in Las Vegas, Nevada. The following March, Boaziz assigned this contract to a Nevada limited liability company, The Residence Las Vegas, LLC— an entity in which Skyrise Development Group, Inc. was to hold an 83.34% interest and in which Boaziz was to hold a 16.66% interest.

Six weeks after the contract was assigned to The Residence Las Vegas, LLC, its members, Skyrise and Boaziz, executed an operating agreement to govern "the purchase, development, operation, management, marketing and resale" of this project. This operating agreement, accorded management oversight and control of the Las Vegas project to Skyrise, the LLC's majority member, and clearly stated that the parties understood and agreed that all prior representations and understandings by and between the parties were encompassed within the operating agreement and that the operating agreement encompassed the entire agreement between the parties with regard to this project:

> *Section 14.3 Integration.* This Operating Agreement sets forth all (and is intended by all parties herein to be an integration of all) of

3

the promises, agreements, conditions, understandings, warranties and representations among the parties hereto with respect to the Company, the Company business and the property of the Company, and there are no promises, agreements, conditions, understanding, warranties, or representations, oral or written, express or implied, among them other than as set forth herein.

*Section 14.8 Entire Agreement, Etc.* This agreement (together with the Exhibits hereto, or agreements provided for herein, which constitute a part hereof, and the other documents delivered pursuant hereto) constitutes the entire agreement of the parties hereto with respect to the subject matter hereof and supersedes all prior agreements and understandings of the parties with respect to the subject matter hereof.

Approximately one month after signing this operating agreement, Skyrise and Golan Equity Management, LLC, an entity owned by Boaziz, executed another operating agreement relating to this project. The stated purpose of this agreement was to form and operate a Florida limited liability company, The Residence Florida, LLC, to either develop, operate, manage, market, and resell real property or to acquire an interest in other entities which were engaged in such activities, more specifically the Nevada limited liability company's interest in the Las Vegas condominium conversion project.

This operating agreement, like the operating agreement governing the Nevada limited liability company, identified the same two members: Skyrise (an entity owned by Houri and Toledano) with an 83.34% interest and Golan (an entity owned by Boaziz) with a 16.66% interest. And like the operating agreement governing the Nevada limited liability company, this agreement represented that it

4

encompassed the entire agreement between the parties and that all prior representations and understandings between the parties were encompassed within the agreement.

After this agreement was executed, the parties amended the operating agreement for the Nevada limited liability company, The Residence Las Vegas, LLC, to reflect that Skyrise and Boaziz no longer were members but that now the sole member of the Nevada company was The Residence Florida, LLC (an entity whose members were Skyrise and Golan). The amended operating agreement, like the two operating agreements before it, included the same integration clause and a clause regarding the entirety of the parties' understanding.

Purchase of the Las Vegas apartment complex was closed on June 25, 2005.

## Villaggio on the Lakes Condominium Conversion Project

This project commenced in January 2005, when Houri and Toledano identified a potential condominium conversion project in Florida, the Villaggio on the Lakes project. In March 2005, Villaggio on the Lakes Development, LLC was formed to purchase the Villaggio Lakes property. The sole member of this company is Villaggio Holdings, LLC, an entity owned equally by Boaziz, Houri, and Toledano individually. The operating agreements for both Villaggio on the Lakes Development, LLC and Villaggio Holdings, LLC expressly state their purpose as the purchase and development of the Villaggio Lakes condominium

5

conversion project, and like the agreements made with regard to The Residence Las Vegas conversion, include identical or virtually identical integration clauses and provisions regarding the entirety of the understanding between the parties.

## The Golden Isles Project

The Golden Isles project involved the purchase of property in Hallandale Beach, Florida. Boaziz located the property and invited Houri and Toledano to be equal partners with him in the purchase and resale of the property. In October 2004, Boaziz, Houri, and Toledano purchased the property in Golden Isles for $3,500,000. Unlike the Residence Las Vegas project or the Villaggio on the Lakes project, no operating or other written agreements were ever executed by the parties with regard to this project.

## The Claims Made Below

Claiming the existence of an overarching joint venture agreement, Boaziz alleged, with regard to The Residence Las Vegas project, that Toledano and Houri breached fiduciary duties owed to him, conspired to commit fraud, and defrauded him first by getting him to agree to take less than a one third interest in this venture and then later by diverting funds from the project to themselves or entities controlled by them. Boaziz also claimed that by committing these acts, Toledano and Houri and the entities controlled by them violated Florida's Uniform Fraudulent Transfer Act.[2]

6

Again claiming a joint venture, Boaziz alleged as to the Villaggio on the Lakes project, that Toledano and Houri had breached fiduciary duties owed to him, conspired to commit fraud, and defrauded him by diverting funds to themselves or entities controlled by them. He similarly claimed violation of Florida's Fraudulent Transfer Act as a consequence of these actions on the part of Toledano, Houri and entities controlled by them.[3]

As to the Golden Isles project, Boaziz, claiming a joint venture, alleged that Toledano and Houri breached fiduciary duties owed to him and that they had conspired to defraud and had defrauded him.[4]

**The Final Judgment**

---

[2] The claims as to The Residence Las Vegas were: breach of fiduciary duty against Toledano (Count I) and Houri (Count II); fraud against Toledano and Houri (Count III); civil conspiracy against Toledano and Houri (Count IV); and violation of Florida's Uniform Fraudulent Transfer Act against Toledano, Houri, Skyrise, FCI, FOS, 26 Realty, and Realty Advice, LLC (Count V).

[3] The claims as to Villaggio were: breach of fiduciary duty against Toledano (Count IX) and Houri (Count X); fraud against Toledano and Houri (Count XI); civil conspiracy against Toledano and Houri (Count XI [sic]); and violation of Florida's Uniform Fraudulent Transfer Act against Toledano, Houri, Central Florida Hotel Management, LLC ("CFHM"), Skyrise, 26 Realty, and Realty Advice (Count XIII).

[4] The claims as to Golden Isles were: breach of fiduciary duty against Toledano (Count V [sic]) and Houri (Count VI); fraud against Toledano and Houri (Count VII); and civil conspiracy against Toledano and Houri (Count VIII).

7

The trial court found the parties were joint venturers in all three projects. Without barely a mention of the parties' numerous written agreements, the court below found that Houri individually had breached duties owed to Boaziz, had conspired to commit fraud, and had defrauded Boaziz with regard to all three projects. The court below also found that Houri had fraudulently transferred funds from the Las Vegas project to one of his companies, FOS, and that since Houri was the "alter ego" of FOS, both he and it were liable to Boaziz. The court similarly found that Houri had fraudulently transferred funds from the Villaggio project to Skyrise and another of his companies, Realty Advice, LLC, and assessed damages against Houri individually and against these companies on this claim as well.

Judgment[5] was entered against Houri personally for breach of fiduciary duty, fraud, and civil conspiracy with regard to his actions as they related to all three real estate projects. Judgment also was entered against Houri personally for violating Florida's Uniform Fraudulent Transfer Act with regard to his actions as they related to The Residence Las Vegas and the Villaggio projects. Likewise, judgment was entered against FOS and Realty Advice, LLC, two entities owned by Houri, as well as against Skyrise, a dissolved corporation owned by both Houri and Toledano, finding FOS liable for violating Florida's Uniform Fraudulent Transfer

---

[5] The original final judgment executed on February 7, 2014, was amended on July 24, 2014, and incorporates the findings of fact and conclusions of law detailed in the February 7 final judgment.

Act with regard to The Residence Las Vegas project, and Skyrise and Realty Advice liable for violating Florida's Uniform Fraudulent Transfer Act with regard to the Villaggio project.

Damages in the amount of $38,000,000[6] were awarded against these defendants, with over $20,000,000 of that sum being assessed against Houri individually. Pursuant to a stipulation between the parties that no judgment would be entered in excess of $5,000,000, an amended final judgment was entered reducing the damage awards against Houri and FOS to $4,100,000 each, and in total, to account for a $900,000 settlement from Toledano.[7, 8]

Houri and his associated companies appeal, claiming in substantial part that the express provisions of the written agreements entered by the parties preclude most, if not all, of the awards entered below. Because we agree that the agreements governing The Residence Las Vegas and Villaggio projects preclude

---

[6]The Final Judgment awards including pre-judgment interest were:

| | |
|---|---|
| Against Houri: | $21,549,490.58 |
| Against FOS: | $14,897,664.00 |
| Against Skyrise: | $ 1,450,698.17 |
| Against Realty Advice: | $      71,143.58 |

[7]Before trial, Boaziz settled for $900,000 with Toledano and the two entities, Florida Capital Investments, LLC ("FCI"), and 26 Realty, LLC, controlled by Toledano.

[8] The parties further stipulated that Boaziz's total recovery would be limited to this amount whether collected from any one or any combination of the defendants.

liability from being assessed against Houri individually, we reverse the damage awards assessed against him with regard to those entities. We also reverse the judgment entered against FOS on The Residence Las Vegas project and the judgment against Skyrise and Realty Advice on the Villaggio project, because, as a matter of law, those entities could not be held legally accountable for violating Florida's Uniform Fraudulent Transfer Act. We do, however, affirm those portions of the final judgment against Houri individually for breach of fiduciary duty, fraud, and civil conspiracy, as to the Golden Isles project.

## Houri's Individual Liability as to The Residence Las Vegas Project

*a. Breach of Fiduciary Duty, Fraud, Civil Conspiracy, Violation of FUFTA*

The Final Judgment against Houri individually as it relates to The Residence Las Vegas project is predicated on the trial court's determination that he, Toledano, and Boaziz were engaged in a joint venture relationship and as a consequence Houri owed his fellow joint venturers a fiduciary duty to act in good faith. See Reaves v. Hembree, 330 So. 2d 747, 749 (Fla. 1st DCA 1976) ("There is a fiduciary relationship between joint venturers. They owe each other the utmost good faith, fairness, and honesty."). The record is clear however, that in the instant case, the three men at the center of this controversy—Houri, Toledano and Boaziz—instead of proceeding as a joint venture, from the beginning, chose to set out the parameters of their relationship and its accompanying obligations through

10

the creation of a series of limited liability companies with governing operating agreements.  See Florida Tomato Packers v. Wilson, 296 So. 2d 536, 539 (Fla. 3d DCA 1974) ("A joint venture has been defined as a special combination of two or more persons, who, in some specific venture seek to profit jointly without the existence between them of any actual partnership, corporate, or other business entity."); accord Florida Trading & Inv. Co. v. River Const. Servs., Inc., 537 So. 2d 600, 602 (Fla. 2d DCA 1988);  see generally Creation of Joint Venture, 9 Fla. Pl. & Pr. Forms § 72:1 ("A joint venture is a special combination of two or more persons jointly seeking a profit in some specific venture, without any actual partnership, corporation, or other business entity." (footnotes omitted)).

While the agreements entered by the parties could not eliminate a general duty of good faith, see § 608.2445, Fla. Stat. (2004), they could and did otherwise dictate the nature of their relationship and the obligations each owed to the others. For as we observed in Dinuro Investments, LLC v. Camacho, 141 So. 3d 731, 742-43 (Fla. 3d DCA 2014), "limited liability is one of the paramount reasons for forming an LLC."  Here, it is precisely those layers of protection from personal liability accorded by the parties' agreements that preclude Boaziz from recovering from Houri, individually.

As reflected in The Residence Las Vegas, Nevada operating agreement, this project was to be pursued by Skyrise (not Houri individually) and Boaziz, with

Skyrise acting as the project's sole managing member. The Residence Florida agreement also was created by and between Skyrise (again not Houri) and Golan Equity Management, and like the Nevada agreement confirmed that this project was to be pursued by its two members: Skyrise and Golan. It was this entity, comprised of Skyrise and Golan, which ultimately became the sole member of The Residence Las Vegas.[9] Thus, Skyrise as managing member of The Residence Las Vegas owed a duty of loyalty and a duty of care to its sole member The Residence Florida. See § 608.4225, Fla. Stat. (2004). Houri was not, therefore, a player in this game at all, other than being a part owner of Skyrise.

Nowhere in Boaziz's 45-page complaint did Boaziz seek to pierce either Skyrise's corporate veil or, for that matter, the corporate veil of any of the other limited liability companies that he, Toledano, and Houri created. "The law is clear that the mere ownership of a corporation by a few shareholders, or even one shareholder, is an insufficient reason to pierce the corporate veil. '[E]ven if a corporation is merely an alter ego of its dominant shareholder or shareholders, the corporate veil cannot be pierced so long as the corporation's separate identity was lawfully maintained.'" Gasparini v. Pordomingo, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008) (quoting Lipsig v. Ramlawi, 760 So. 2d 170, 187 (Fla. 3d DCA

_____

[9] Similarly, each of the other two agreements governing this project name Skyrise—not Houri—as manager and accord that entity broad management and control authority.

12

2000)); <u>Dania Jai-Alai Palace, Inc. v. Sykes</u>, 450 So. 2d 1114, 1120 (Fla. 1984) ("The mere fact that one or two individuals own and control the stock structure of a corporation does not lead inevitably to the conclusion that the corporate entity is a fraud or that it is necessarily the alter ego of its stockholders to the extent that the debts of the corporation should be imposed upon them personally.") (quoting <u>Advertects, Inc. v. Sawyer Indus., Inc.</u>, 84 So. 2d 21, 23 (Fla.1955)). With no claims propounded and no determination made that Skryise's corporate identity should be disregarded, no judgment against Houri personally could be assessed for breach of fiduciary duty, fraud, or conspiracy as to this project.

b. *Boaziz's Fraudulent Inducement and Fraud Claims*

We further reject Boaziz's claim that he is entitled to a judgment against Houri individually for fraudulently inducing him to reduce what was to be his one third interest in the project by half to take only a 16.66% interest. We do so first because each of the documents executed by Boaziz establish that this project always was contemplated to be between Skyrise and Boaziz or one of Boaziz's entities and not between Skyrise's principals (Houri and Toledano) and Boaziz. Early on, at least six weeks before Boaziz surrendered one half of his contemplated interest in this project, he assigned the contract in which he was to be the sole purchaser of the Las Vegas apartment complex to The Residence Las Vegas, LLC—an entity with two members, Skyrise and Boaziz. The document evidencing

13

the assignment was not signed by Houri but by Toledano as president of Skyrise Development Group, Inc. as managing member of The Residence Las Vegas, LLC. Six weeks after this assignment, Boaziz received a check from Skyrise Development Group, Inc., the manager of the project, bearing the notation "sale of 16.66% of Canyon Lake, NV." Boaziz subsequently executed three operating agreements governing the purchase, ownership, development, management of the Las Vegas property, each of which established that the participants in this project were Skyrise and Boaziz. As all of this confirms, at all times, Boaziz was fully aware that as he was dealing with Skyrise and not Houri personally on this project.

Here, as with his other claims relating to this project, Boaziz neither sought to secure nor secured any relief from Skyrise for fraudulently inducing him to decrease his interest in The Residence Las Vegas project. Rather, Boaziz's entire fraudulent inducement claim rests on acts purportedly performed by Houri individually.

A corporation can, of course, act only through its agents. See Morgan Int'l Realty, Inc. v. Dade Underwriters Ins. Agency, Inc., 617 So. 2d 455, 459 (Fla. 3d DCA 1993) ("[I]it is well established 'that a corporation can only act through its officers and agents.' Browning v. State, 101 Fla. 1051, 1054, 133 So. 847, 848 (1931)."). And, as already stated, simply acting on behalf of a corporation or owning most or all of its shares does not subject a corporate representative or

14

shareholder to individual liability.  See Gasparini, 972 So. 2d at 1055.  Since Boaziz did not allege a basis on which Skyrise's corporate identity could be disregarded, and since no basis for doing so was found by the court below, judgment could not be assessed against Houri personally on these claims.

*c. Boaziz's FUFTA Claims*

For the same reason, liability could not be assessed against Houri on count V of the complaint for violation of Florida's Uniform Fraudulent Transfer Act. Absent a determination that Skyrise engaged in fraudulent transfers, and a determination that evidence existed to support piercing its corporate veil, liability could not be assessed against either FOS or Houri as the "alter ego" of FOS for receiving a fraudulent transfer.  We therefore reverse the judgment on count V against Houri and FOS for violating Florida's Uniform Fraudulent Transfer Act.

*d. Conclusion*

In sum, the multi-layered limited liability companies and their operating agreements outlined herein (created in part by Boaziz himself), with Houri personally neither a member nor a manager, and with many of the claims addressing injury to the limited liability companies rather than Boaziz himself, all preclude recovery by Boaziz from Houri, individually.  Accordingly, the judgment against Houri individually on counts II for breach of fiduciary duty, III for fraud, IV for civil conspiracy, and V for violation of Florida's Uniform Fraudulent

15

Transfer Act, all related to The Residence Las Vegas project, are reversed. Similarly, the judgment against FOS on count V for violation of Florida's Uniform Fraudulent Transfer Act is reversed.

## Houri's Individual Liability as to the Villaggio Project

*a. Breach of Fiduciary Duty, Fraud, Civil Conspiracy, Violation of FUFTA*

Here, as with The Residence Las Vegas project, the finding of a joint venture cannot be the premise for a recovery by Boaziz. The parties' written agreements confirm that the parties intended to operate this project, as they did with regard to The Residence Las Vegas, pursuant to written agreements, through a series of limited liability companies. See Florida Tomato Packers, 296 So. 2d at 539; accord Florida Trading & Inv. Co., 537 So. 2d at 602. Also, as was the case with the Las Vegas project, Boaziz made no attempt to pierce the corporate veil of the entities he had helped form, and thus was bound by the limitations to liability those entities created. See Dania Jai-Alai Palace, Inc., 450 So. 2d at 1120.

Moreover, because of the agreements in place, Boaziz could not recover on claims that Houri improperly diverted funds from the Villaggio project to entities that Houri owned or controlled (Skyrise and Realty Advice).[10] This is so because Boaziz had no ownership interest to protect in Villaggio on the Lakes

---

[10] Although Boaziz also sought to impose liability on FOS in the counts relating to the Villaggio project, no liability was assessed in the final judgment against this entity, in connection with that project.

Development, LLC, the entity that "purchased, developed, operated, marketed, maintain[ed]/ and or [sold] the parcels of real property"[11] at issue here. To the contrary, that entity was wholly owned not by Boaziz, Toledano, and Houri but solely by Villaggio Holdings, LLC. Thus, it was to that entity, Villaggio Holdings, that a duty of care was owed. see § 608.2445, Fla. Stat. (2005).

This action was not, however, brought by Villaggio Holdings, LLC, the "injured" party, but individually by Boaziz (one of the three members of that entity). "Generally, a shareholder cannot sue in the shareholder's name for injuries to a corporation unless there is a special duty between the wrongdoer and the shareholder, and the shareholder has suffered an injury separate and distinct from that suffered by other shareholders." Braun v. Buyers Choice Mortg. Corp., 851 So. 2d 199, 203 (Fla. 4th DCA 2003); see also Dinuro, 141 So. 3d at 738 (confirming that a shareholder may bring suit to address an injury separate and distinct from that sustained by other stockholders, however, if the injury is primarily against the corporation, then the action belongs to the corporation).

In this case, any "wrongdoer" was one or more of three managing members of a wholly owned subsidiary company, Villaggio on the Lakes Development, whose purported wrongs resulted in injury to its sole shareholder/member, Villaggio Holdings LLC, its parent holding company. As one of three members of

---

[11] This statement was in the recitals portion of the Villaggio on the Lakes Development, LLC Operating Agreement.

17

that entity (Villaggio Holdings), Boaziz only suffered a harm that flowed from an initial harm to Villaggio Holdings. He was, therefore, without authority to bring this action directly, and certainly could not tag Houri, individually. Thus, and primarily, this action was brought *against* the wrong party—Houri, individually, rather than the LLC responsible for the wrongs alleged. Additionally, the action was brought *by* the wrong party—Boaziz—rather than the LLC, he and his business cohorts had created to be the sole owner of the Villaggio on the Lakes Development. With no effort to pierce the corporate shields carefully erected by these parties, the trial court was not at liberty to ignore the corporate entities they had chosen to employ to conduct their business. See Dania Jai-Alai Palace, Inc., 450 So. 2d at 1120. Either or both of these errors support the conclusion we reach herein.

### b. Fraud in the Inducement

We write separately to address a claim similar to that made as to the Las Vegas Project—that but for Houri's (and Taledano's) mis-statements, Boaziz would have struck a better deal for himself. Here, Boaziz claims he was fraudulently induced to contribute most of the equity to the Villaggio project but accept only a 33% interest in the project. To establish fraud in the inducement, Boaziz had to allege and prove (1) that Houri made a statement concerning a material fact; (2) that he knew or should have known was false when made; (3) that

18

he intended that Boaziz act on his false statement; and (4) that Boaziz reasonably acted thereon and was damaged as a result. See Gimini Inv'rs III, L.P. v. Nunez, 78 So. 3d 94, 97 (Fla. 3d DCA 2012); see also Rhodes v. O. Turner & Co., LLC, 117 So. 3d 876 (Fla. 4th DCA 2013) (stating the element of fraud as (1) a false statement of specific material fact; (2) known to be false when made; (3) made for the purpose of inducing reliance; and (4) on which another justifiably relied to his detriment). While a fraudulent statement generally must concern a past or existing fact, a promise to act in the future may be actionable if made with no intention of performing. Id.; Mejia v. Jurich, 781 So. 2d 1175, 1177 (Fla. 3d DCA 2001) (confirming that an action for fraud usually must be predicated on a statement concerning a past or existing fact, however, "if the plaintiff can demonstrate that the person promising future action does so with no intention of performing or with a positive intention not to perform").

Fraud must be pled with particularity and must not only specifically identify a misrepresentation of fact but also identify when, where, or the manner in which it was made. Cedars Healthcare Grp., Ltd. v. Mehta, 16 So. 3d 914, 917 (Fla. 3d DCA 2009) ("The factual basis for a claim of fraud must be pled with particularity and must specifically identify misrepresentations or omissions of fact, as well as time, place or manner in which they were made"); Robertson v. PHF Life Ins. Co., 702 So. 2d 555, 556 (Fla. 1st DCA 1997) ("Florida Rule of Civil Procedure

19

1.120(b) requires that allegations of fraud be pled with specificity" and must identify the time, place or manner in which the representations were made).

Count XI alleging fraud in the inducement against Houri as to the Villaggio project satisfies none of these requirements. In its entirety, the complaint as to this claim states only that at some unspecified time and under some unidentified circumstances, Houri "misrepresented" that he and Boaziz were making the same contribution to this project for the same interests:

> As described above, Toledano and Houri each misrepresented to Boaziz that each partner and co-venturer would make equal equity contributions to the Villaggio Project so that Boaziz would agree to take only a 1/3 interest in the project. Toledano and Houri made such representations to induce Boaziz to enter into a limited liability company operating agreement relating to the Villaggio Project reflecting such an ownership interest. Boaziz would not have entered into such agreement had he known such representations by Toledano and Houri.

This falls far short of alleging with particularity when this representation was made and under what circumstances it was made—that is, in January of 2005 when this project was first identified, three months later when operating agreements were signed, or sometime in between when the parties were putting the project together. This also fails to state that when the representation was made that Houri either knew or should have known that he was not going to contribute the same or substantially the same as Boaziz for a similar interest. In sum, Boaziz failed to

20

state a claim for fraudulent inducement with regard to this project on which he could recover.

The final judgment entered below underscores these shortcomings and confirms that fraud in the inducement was not established. The judgment finds only that "Houri knew [the representation that he would invest one-third of all required equity for the Villaggio Project] was false since the greater weight of the evidence reflects that he invested far less than one-third of all required funds." The fact Houri invested fewer funds in this project than did Boaziz establishes neither that Houri's representation about his intended contribution was false when it was made or that he had no intention of making the promised contribution. To the contrary, this determination confirms only that at some point in time the parties contemplated making equal or substantially equal capital contributions for receipt of equal interests in this project and that ultimately Houri did not contribute the same amount of cash as did Houri. As this confirms, no fraud in the inducement was proved to exist. Nor was any alleged. Boaziz is, therefore, bound by the terms of the agreements he entered with regard to this project.

*c. Conclusion*

The judgment entered against Houri on counts X for breach of fiduciary duty, count XI for fraud, count XI [sic] for civil conspiracy, and count XIII for violation of Florida's Uniform Fraudulent Transfer Act, all related to the Villaggio

21

project, is, therefore, reversed. Because Boaziz enjoyed no individual right of action stemming from Houri's alleged wrongdoing, we reverse the judgment against Skyrise and Realty Advise on count XIII for violation of Florida's Uniform Fraudulent Transfer Act.

### Houri's Individual Liability as to the Golden Isles project

A different result obtains with regard to the Golden Isles project. With no operating agreements in place as to the Golden Isles project, we cannot say the trial court erred either in finding that a joint venture existed as to that project or as to the duties associated with that designation. We therefore affirm that portion of the final judgment holding Houri personally liable for breach of fiduciary duty, fraud, and civil conspiracy as alleged in counts VI, VII, and VIII of the third amended complaint relating to the Golden Isles project.

### Conclusion

In light of our other rulings herein reversing the awards entered below with regard to The Residence Las Vegas and the Villaggio projects, we remand for recalculation of the amount of damages to be awarded on the Golden Isles project with the caveat that the amount awarded take into consideration the Toledano settlement.[12]

---

[12] The total amount awarded on these counts before reduction to account for the Toledano settlement was $907,888.58 which sum included prejudgment interest.

22

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.