# Third District Court of Appeal

## State of Florida

Opinion filed August 31, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D15-213
Lower Tribunal No. 09-31895
_____


**Tulga Demir,**
Appellant,

vs.

**Georg Schollmeier,**
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, Rosa I. Rodriguez, Judge.

Stok Folk + Kon and Robert A. Stok, Joshua R. Kon and Benjamin P. Nigro, for appellant.

Fowler White Burnett, P.A., and Susan H. Aprill and Alexandra L. Tifford (Fort Lauderdale) and Esther E. Galicia for appellee.


Before ROTHENBERG, LAGOA, and LOGUE, JJ.

LAGOA, J.

Appellant, Tulga Demir ("Demir"), appeals the trial court's final order granting summary judgment in favor of Appellee, Georg Schollmeier ("Schollmeier"), on Count I of his complaint. Because the agreement governing the parties' financial contributions made to Avrupa, LLC ("Avrupa" or "the company") precludes liability against Demir individually, we reverse the final judgment award assessed against him.

I.     FACTUAL & PROCEDURAL HISTORY

Demir formed Avrupa for the purpose of managing and operating a night club on Miami Beach known as "Club Sin." On January 3, 2007, Schollmeier, Demir's personal friend, entered into an agreement with Demir and Demir's brother, Tugend, titled the "Avrupa, LLC Contribution Agreement" (the "Agreement"), which contemplated that the three would become members of Avrupa. Pursuant to the Agreement, Schollmeier was to contribute $400,000.00 to Avrupa for a 20% interest in the company, and Demir and Tugend were to contribute $1,000,000.00 each, for 40% interests in the company. Section 6(a) of the Agreement stated that "[c]oncurrently with the execution of this Agreement, the Members are making . . . contributions to [Avrupa], which will constitute capital of [Avrupa]" and that "[c]ontributions can be made to Avrupa's LLC's bank account." Section 3 of the Agreement also provided that "Schollmeier may decide to withdraw from ownership of [Avrupa], in which case Schollmeier's

2

contribution of $400,000.00 US shall be reimbursed." Additionally, section 1 of the Agreement, which was titled **Limited Liability Company Agreement,** stated "[t]his Agreement is a limited liability agreement under and as provided in the Act."[1] The Agreement was signed by Demir, Tugend, and Schollmeier as "the Members" of Avrupa.

In January 2007, Schollmeier wired $375,000.00 into Avrupa's bank account.[2] Club Sin opened in early February 2007 and closed on March 29, 2007. On May 31, 2007, Schollmeier sent Demir notice of his election under the Agreement to withdraw as a member from the company, demanding that Demir wire $400,000.00 into Schollmeier's bank account. After Demir failed to wire Schollmeier the funds, Schollmeier filed a four-count complaint against Demir and Tugend[3] on April 20, 2009, seeking $400,000.00 in damages for breach of contract (Count I), breach of fiduciary duty (Count II), breach of statutory duty of loyalty and care (Count III), and accounting (Count IV). In his answer, Demir denied,

---

[1] The Agreement defines the "Act" as "the Limited Liability Company Act of the State of Florida."

[2] Schollmeier alleges that on January 3, 2007, he gave Demir a $25,000.00 check made payable to Demir, which Demir endorsed. Throughout the trial court proceedings, however, Demir disputed this $25,000.00 contribution. Schollmeier states that because this sum was subject to a factual dispute, Schollmeier proceeded with his claim to recover summary judgment only as to the undisputed amount of $375,000.00.

[3] Schollmeier obtained a default judgment against Tugend on December 13, 2010, and a default final judgment was entered on March 8, 2011.

inter alia, breaching the Agreement and asserted the following affirmative defenses: "estoppel," "the doctrine of unclean hands," and "assumption of risk."

On August 29, 2014, Schollmeier filed a motion for summary judgment as to Count I of the complaint, claiming that no genuine issue of material fact regarding whether Demir breached the Agreement and caused Schollmeier $375,000.00 in damages. Demir filed a response in opposition to summary judgment, asserting that factual disputes did, in fact, remain as to whether he was personally liable to Schollmeier for his contribution to Avrupa. Demir subsequently filed a motion for leave to amend his answer and affirmative defenses to include this argument, as well as proposals for settlement as to Counts II, III, and IV of the complaint, which Schollmeier later accepted.

On December 12, 2014, the trial court granted Schollmeier's motion for summary judgment, finding that Demir was personally liable to Schollmeier for breaching the Agreement. Five days later, on December 17, 2014, Demir filed a motion for judgment on the pleadings, asserting that the trial court failed to join Avrupa as an indispensable party. The trial court denied both Demir's motion for leave to amend his answer and affirmative defenses and his motion for judgment on the pleadings. Final judgment was entered against Demir personally on January 13, 2016. This appeal followed.

## II. STANDARD OF REVIEW

The standard of review for an order granting summary judgment is de novo. Volusia Cty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000). Under Florida Rule of Civil Procedure 1.510(c), summary judgment is only appropriate when the "pleadings and summary judgment evidence on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fla. R. Civ. P. 1.510(c).

## III. ANALYSIS

The final judgment against Demir individually as it relates to Schollmeier's financial contribution to Avrupa is based on the trial court's determination that the Agreement between Demir, Tugend, and Schollmeier was not a limited liability company operating agreement under Florida's Limited Liability Company Act ("the Act"), but instead a personal contract solely governing the terms of Schollmeier's contribution to Avrupa. We disagree.

The record is clear that Demir, Tugend, and Schollmeier set out the parameters of their relationship and its accompanying obligations through the creation of a limited liability company with a governing operating agreement. See § 608.423(1), Fla. Stat. (2007) ("[A]ll members of a limited liability company may enter into an operating agreement . . . to regulate the affairs of the limited liability company and the conduct of its business, establish duties . . . and to govern

5

relations among the members, managers, and company). Although the parties' Agreement was not titled an "operating agreement," nor was it executed at the time Avrupa was established as a limited liability company, the Agreement "could and did otherwise dictate the nature of [the parties'] relationship and the obligations each owed to the others." Houri v. Boaziz, 41 Fla. L. Weekly D625, D627 (Fla. 3d DCA Mar. 9, 2016); see also § 608.423(1), Fla. Stat. (2007) ("The members of a limited liability company may enter into an operating agreement before, after, or at the time the articles of organization are filed . . . ."). Indeed, section 1 of the Agreement explicitly stated that "[the] Agreement is a limited liability company agreement under and as provided in the Act." As we recently stated in Dinuro Investments, LLC v. Camacho, 141 So. 3d 731, 742 (Fla. 3d DCA 2014), "limited liability is one of the paramount reasons for forming an LLC." As discussed below, it is precisely those layers of protection from personal liability that preclude Schollmeier from recovering from Demir individually.

"An operating agreement is a contract." Dinuro, 141 So. 3d at 741. Thus, if Demir owed a financial duty directly to Schollmeier under the terms of the Agreement, Schollmeier could recover under a breach of contract claim and summary judgment would have been proper. "However, unlike a typical bilateral contract, where both signing parties owe duties to one another, operating agreements establish a more complicated and nuanced set of contractual rights and

duties." Id. Operating agreements govern the relations among the members, the managers, and the limited liability company itself, as well as the effect of these relations on third parties. See § 608.423(1), Fla. Stat. (2007). "This distinction is important because the signing parties to an operating agreement may very well decide that no individual member owes the other members any duties whatsoever, and that those duties are owed only to the company." Dinuro, 141 So. 3d at 741. This Court also made clear that "the precise terms of the agreement are critical" in determining whether a party has breached a contractual duty. Id.

Here, in support of his claim for breach of contract, Schollmeier relies on section 3 of the Agreement, which outlines the duration of the company, including the circumstances under which the Members may decide to sell the company and how a Member may purchase another Member's interest in the company. Schollmeier focuses on a portion of section 3 of the Agreement, which states in relevant part: "Schollmeier may decide to withdraw from ownership of [Avrupa], in which case Schollmeier's contribution of $400,000.00 US shall be reimbursed." Schollmeier asserts that this language allows him to recover his capital contribution from Demir personally, rather than from Avrupa, and that Demir's failure to pay Schollmeier constituted a breach of the Agreement.

Section 6(a) of the Agreement, however, provides that "[c]oncurrently with the execution of this Agreement, the Members are making the following

7

contributions to [Avrupa], which will constitute capital of [Avrupa]." Moreover, it specifies that each Member's "[c]ontributions can be made to Avrupa's LLC's bank account with Bank of America," and includes the company's account and routing numbers. Finally, sections 6(b) and 6(c) discuss the effect on each Member's interest in Avrupa due to the potential increase and decrease of the Member's contributions, as well as the fact that Avrupa "will not pay interest on capital contributions." These sections of the Agreement, as well as the provisions noted above, lead us to conclude that when Schollmeier withdrew from ownership in Avrupa, his capital contribution to the company was to be reimbursed *by the company*. To read these provisions to mean that the individual Members of Avrupa are required to reimburse a capital contribution explicitly made to only the company is to read more into the Agreement than what its Members agreed upon. See Aristech Acrylics, LLC v. Lars, LLC, 116 So. 3d 542, 544 (Fla. 3d DCA 2013) (stressing that "a court must construe a contract in a manner that accords with reason and probability; and avoid an absurd construction." (quoting Kipp v. Kipp, 844 So. 2d 691, 693 (Fla. 4th DCA 2003))).

In Dinuro, this Court considered the issue of a member's personal liability in relation to a limited liability company's operating agreement and stated,

> Conspicuously missing from the operating agreement is any provision stating that the members shall be directly liable to each other for breaches of the terms of the operating agreement. Absent such a stipulation, we presume individual members are **not** liable for

8

obligations or decisions of the company, as limited liability is one of the paramount reasons for forming an LLC. Section 608.4227 of the Florida Statutes specifically provides that members are typically shielded from individual liability for their involvement with an LLC unless the terms of the articles of organization or the operating agreement provide otherwise.

141 So. 3d at 742. Here, the Agreement does not contain any provision or language indicating that any Member of Avrupa would be personally liable to any other Member for the company's obligations, including the reimbursement of capital contributions made to the company. If the parties intended such a result, the terms needed to be explicit. We also note that section 608.4227(1), Florida Statutes (2011), provides:

> Except as provided in this chapter, the members, managers, and managing members of a limited liability company are **not liable**, solely by reason of being a member or serving as a manager or managing member, under a judgment, decree, or order of a court, or in any other manner, for a debt, obligation, or liability of the limited liability company.

(emphasis added). Schollmeier cannot show that an exception to this general principle is established in the parties' Agreement. Because only Avrupa was required to reimburse Schollmeier's contribution, Demir cannot be held individually liable for the company's debt.

IV. CONCLUSION

Because the company's operating Agreement does not authorize a Member to bring a direct action against another Member for a breach of its terms,

9

Schollmeier is not entitled to reimbursement of his capital contribution to Avrupa from Demir. Thus, we find that the trial court erred in granting summary judgment in Schollmeier's favor and reverse the trial court's order.[4]

Reversed and remanded.

---

[4] We do not address the remaining issues raised by Demir as we are reversing the trial court's entry of summary judgment in favor of Schollmeier and no further counts remain pending before the trial court.